NEWTON E. FINN, Plaintiff-Appellee, *v.* TERENCE A. TUCKER, Treasurer of Lake County, Defendant-Appellant.

Second District No. 79-51

Opinion filed March 14, 1980.

Dennis P. Ryan, State's Attorney, of Waukegan (Robert J. Masini and William J. Blumthal, Assistant State's Attorneys, of counsel), for appellant.

Newton E. Finn, of Finn, Geiger and Rafferty, of Waukegan, for appellee, *pro se.*

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant-appellant, Terence A. Tucker, appeals from an order of the Circuit Court of Lake County enjoining him from collecting or attempting to collect any increases in 1977 real estate taxes resulting from tardily published assessments.

Plaintiff-appellee, Newton Finn, is the owner of certain real property located in Waukegan Township in Lake County, Illinois. On August 31, 1978, he filed a complaint seeking to enjoin collection of a portion of the 1977 real estate taxes on all real property located in 17 of the 18 Lake County townships. Terence Tucker, treasurer of Lake County and as its ex-officio collector, was named as defendant.

Plaintiff alleged in his complaint that, with the exception of Shields Township, Lake County real estate assessment lists were not published by December 15, 1977, as required by statute. (Ill. Rev. Stat. 1977, ch. 120, par. 584.) Plaintiff further alleged that due to this tardy publication, the

assessment lists were void and unauthorized by law. As relief, plaintiff requested that the court enjoin the defendant from collecting or attempting to collect that portion of the 1977 real estate taxes which constituted an increase in the prior year resulting from computations based on the tardily published assessment list.

Plaintiff moved for summary judgment and defendant moved to dismiss pursuant to sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45 and 48). On November 3, 1978, the court ruled that equity did not have jurisdiction in the case, and granted the defendant's motion to dismiss. However, the court set the matter for reconsideration for November 6, 1978. On that date, the court vacated the order which had granted the defendant's motion to dismiss. The defendant then filed an answer and affirmative defenses. On November 24, 1978, the court heard arguments on plaintiff's motion for summary judgment. On November 28, 1978, the trial court granted the plaintiff's motion for summary judgment, finding that with the exception of Shields Township, all real estate assessment lists were published after the time prescribed in section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 584), and therefore were not legally authorized. The trial court ordered that a permanent injunction issue *instanter* against the defendant, enjoining him from collecting or attempting to collect any increase in plaintiff's 1977 real estate tax resulting from the tardily published assessment, and further from collecting or attempting to collect any increases in 1977 real estate taxes resulting from tardily published assessments on realty located in Lake County, Illinois, with the exception of real property located in Shields Township.

The defendant filed a motion to stay enforcement of the judgment order, and a timely notice of appeal. The trial court granted the defendant's motion for a stay.

Four issues are presented by this appeal: (1) did the late publication of 1977 real estate assessments make the 1977 real property tax increases "unauthorized by law" so that an injunction against the collection of the tax was a proper remedy, (2) did the trial court err in enjoining collection of real property tax increases in those townships which were conducting quadrennial assessments in 1977, (3) did the trial court err in granting relief not only to plaintiff personally but also to all other property taxpayers in the affected townships, and (4) does section 318.1 of the Revenue Act of 1939 (Ill. Rev. Stat., 1978 Supp., ch. 120, par. 799.1), which became law on November 30, 1978, validate the assessments in question.

■■ The usual vehicle through which relief from improper assessments is sought and gained is the legal remedy provided by statute for paying taxes under protest and filing objection to the application for judgment.

(Ill. Rev. Stat. 1977, ch. 120, pars. 675 and 716.) As a general rule equity will not grant relief where an adequate remedy at law exists. This preference for legal over equitable remedies in tax cases is to insure that taxing units will not face protracted delays in the necessary collection of taxes. (See *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.) There are, however, two exceptions to this general rule, namely where a tax is "unauthorized by law" or is levied on exempt property. In such cases, equitable relief is available without a showing that an adequate remedy at law is lacking. *Lackey v. Pulaski Drainage District* (1954), 4 Ill. 2d 72, 74, 122 N.E.2d 257, 259; *Clarendon Associates*; see also Parham, *Procedures for Obtaining Relief with Respect to Property Tax Assessments and Rates*, 61 Ill. Bar. J. 306 (1973).

Section 103 of the Revenue Act provides in pertinent part:

"In counties containing less than 2,000,000 inhabitants, as soon as the county assessor, supervisor of assessments or board of assessors, as the case may be, has completed the assessment in the county or in the assessment district he or it shall, in each year of a quadrennial assessment of real property, publish for such county or assessment district a full and complete list of the assessment of real and personal property, by townships if the county be so organized. In years other than years of a quadrennial assessment of real property, the assessor, supervisor of assessments or board of assessors, as the case may be, shall publish the assessment of personal property in full and a list of real estate for which assessments have been added or changed since the last preceding assessment, together with the amounts of the assessments on such real estate. Such publication shall be made on or before July 10, of that year in counties with less than 150,000 inhabitants and on or before December 15, of that year in counties with 150,000 or more but less than 2,000,000 inhabitants, and shall be printed in some public newspaper or newspapers published in the county; or shall be mailed to every person in that township, * * *. In every county containing less than 2,000,000 inhabitants, in addition to the publication of the list of assessments of real property in each year of a quadrennial assessment of real property and of the list of real estate for which assessments have been added or changed, as provided above, a notice shall be mailed by the township assessor, county assessor, supervisor of assessments or board of assessors, as the case may be, to each taxpayer at his address as it appears on the assessor's records as to whose real property the assessment has been changed since the last preceding assessment * * *. * * * In every township or assessment district in which there is published one or more newspapers of general circulation, the list of such

township shall be published in one of the newspapers. ° ° °." (Ill. Rev. Stat. 1977, ch. 120, par. 584.)

In *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332, our supreme court held that the publication dates contained in this section are mandatory requiring strict and timely compliance. In that case the court ruled that since publication had not been timely, "the tax resulting from the increase in assessment is invalid." (71 Ill. 2d 13, 23, 373 N.E.2d 1332, 1336.) *Andrews v. Foxworthy* arose out of a taxpayer challenge where the taxes at issue were initially paid under protest pursuant to the statutorily prescribed remedy. The major issue presented by the instant case is whether late publication amounts to a tax "unauthorized by law" thereby making an injunction a proper remedy.

■■ The question of an unauthorized tax goes to the "power" of the assessor to function and not to the "validity of the tax as levied." While procedural irregularities in the assessment process "may have a bearing on the question of the validity of the taxes levied," they "do not establish the lack of authority of the assessor to act." (*North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 548, 343 N.E.2d 507, 511.) As summarized by our supreme court:

"The rule is that unless there exists special grounds for equitable jurisdiction, such as fraud, irreparable injury, or the absence of an adequate remedy at law, equity will act to enjoin the collection of a tax only if the tax is without legal basis, is levied by officials without authority to act, or is laid upon exempt property. [Citations.] *Such relief will not be granted where mere irregularities are alleged to have occurred or where the proceeding is to correct an erroneous assessment or to question its amount.* [Citations.] It is the lack of authority to levy the tax, not its illegality, that forms the basis for equitable jurisdiction. [Citations.] Equitable relief has been granted to prevent the imposition of the retailers' occupation tax upon an exempt occupation, [citation,] or the enforcement of a tax against an individual for property which he did not own, [citation,] *but it has been denied where the suit was based upon an alleged failure to follow the statute in making the assessment,* [citation,] upon an improper annexation to the taxing district, [citation,] upon disproportionate assessments within the same township, [citation,] and upon excess levies by the taxing officials. [Citation.]" (Emphasis added.) (*Hodge v. Glaze* (1961), 22 Ill. 2d 294, 297-98, 174 N.E.2d 873, 874-75.)

Under these principles, we hold that while untimely publication may make a tax increase "invalid" as in *Foxworthy*, it does not follow that the levies in question are "unauthorized by law." Therefore we conclude that the trial court erred in granting equitable relief. Thus, we reverse the

order of the Circuit Court of Lake County and remand this cause with directions to vacate the injunction and dismiss the complaint.

Having determined that the trial court's order must be reversed, we see no need to discuss the other issues of this case.

Reversed and remanded with directions.

WOODWARD and UNVERZAGT, JJ., concur.