R. D. WERNER CO., INC., *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* LEYDEN FIRE PROTECTION DISTRICT *et al.*, Defendants-Appellants and Cross-Appellees.

First District (5th Division)  Nos. 80-1688, 80-1922 cons.

Opinion filed December 5, 1980.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and McCracken & Walsh, both of Chicago (Thomas J. Weithers, Donald L. Mrozek, Robert G. Hoban, and Patrick C. Doody, of counsel), for appellants.

Kevin M. Forde, Ltd., and Kinnaird & Kinnaird, both of Chicago (Kevin M. Forde, Dorothy Kirie Kinnaird, and R. Burke Kinnaird, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is a consolidated appeal from certain orders of the Cook County Circuit Court which enjoined defendants Leyden Fire Protection District (Leyden) and county tax officials from extending, collecting, and distributing real estate taxes assessed against plaintiffs' property. The named plaintiffs brought the suit as a class action, seeking the injunction and an accounting. On appeal, Leyden contends that: (1) the trial court erred in exercising equitable jurisdiction over this dispute because plaintiffs had adequate legal remedies available; (2) the trial court's certification of the class was erroneous because tax protest questions may not be resolved through class action suits; (3) plaintiffs failed to satisfy the statutory requisites for maintaining a class action; (4) the trial court erred in sequestering the tax funds in issue and in appointing a trustee for all 1979 tax funds collected by Leyden's levy; (5) the trial court erred in ruling that the members of plaintiffs' class would be deemed to have paid the second installment of their 1979 real estate taxes "under protest" if that installment were collected pursuant to the court's modification of its original injunction order; and (6) the injunction deprives Leyden of funds necessary to provide fire protection and paramedic services for the residents in its unincorporated areas. Plaintiffs, in their cross-appeal, contend that (1) the trial court erred in determining that any taxes previously paid by plaintiffs without protest are not recoverable; (2) the court erred in distributing $87,800 from the sequestered funds to Leyden; (3) plaintiffs are entitled to an accounting for tax money wrongfully collected over past years; and (4) the trial court erred in excluding from plaintiffs' class those taxpayers whose properties, annexed to other municipalities, are subject to pending lawsuits to prevent disconnection from the Leyden District.

We reverse the judgment. The circumstances of this case follow.

Leyden Fire Protection District is a municipal corporation and taxing body organized in 1949 pursuant to "An Act in relation to fire protection districts." (Current version in Ill. Rev. Stat. 1979, ch. 127½, par. 21 *et seq.*) Under the Act, Leyden taxes all properties within the district and provides fire protection service to its residents and occupants.

In 1965, the Illinois General Assembly amended the Act to provide for the disconnection from a fire protection district of any territory within a district which is or has been annexed to a city, village, or unincorporated town that also provides fire protection for property within its limits. This section provides that such disconnection is "by operation of law" and is effective, automatically, unless the fire protection district files a petition to prevent disconnection. The district must file its petition within 60 days after the annexation and must allege and prove that the disconnection will cause its remaining territory "to be noncontiguous, or that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district." (Ill. Rev. Stat. 1979, ch. 127½, par. 38.3).

The property at issue in this appeal includes 738 parcels of real estate originally within Leyden's boundaries, which have been annexed, since 1949, to the villages of Franklin Park, Bensenville, and Melrose Park.

On February 24, 1966, Leyden filed a petition to prevent disconnection from its boundaries of those properties annexed to the village of Franklin Park prior to July 1, 1965.[1] The circuit court held that Leyden's petition was not timely filed under section 38.3 and that the Franklin Park annexations had been disconnected from Leyden, by operation of law, on January 1, 1966. *In re Leyden Fire Protection District* (1972), 4 Ill. App. 3d 273, 280 N.E.2d 744.

Despite the court's holding, those parcels have continued to be included in Leyden's tax assessments. In addition, plaintiffs contend, most of the parcels annexed to the other municipalities have also continued to be taxed. As a result, the members of plaintiffs' class have been taxed twice on their property. They also have received "double" fire protection services, from Leyden as well as from the annexing municipality.

On March 3, 1980, plaintiffs filed a class action suit against defendants seeking injunctive relief from further taxation, as well as an account-

---

[1] Leyden never filed petitions to prevent disconnection of the Melrose Park annexations. After July 1, 1965, there were further annexations by Franklin Park and Bensenville. Leyden filed petitions to prevent disconnections of three of the Franklin Park parcels and seven of the Bensenville parcels. Petitions regarding these 10 annexations remain pending in the Circuit Court of Cook County. Although plaintiffs alleged that these parcels should be included in the injunction order, the trial court refused to include them because of the pending petitions. The court did find, however, that if any of these petitions should result in disconnection of the parcels from Leyden, the parcels would thereupon be included in the injunction order against Leyden's further taxation.

ing for past taxes paid by plaintiffs. In substance, plaintiffs allege that since 1966 defendants have wrongfully continued to tax their "disconnected" property and should be enjoined because the taxes are "unauthorized by law."[2] In response, Leyden asserts that plaintiffs have an adequate remedy at law.

On March 6, 1980, after receiving numerous documents as evidence the trial court granted plaintiffs' motion for preliminary injunction to prevent defendants' distribution of real estate taxes already collected for the first installment of the 1979 assessment. The court also permitted the suit to be maintained as a class action, defining the class as "all taxpayers who own and lease taxable property within Leyden Fire Protection District's original boundaries, but which property has been annexed to a city, village, incorporated town or other like municipality, which provides fire protection to the property within its limit." The trial court further ordered the county treasurer to sequester and deposit in an interest-bearing account all taxes that were or would come into his possession for the Leyden District.

The trial of the case commenced on April 30, 1980. The court accepted the parties' written stipulation of facts. Plaintiffs introduced several documents which, along with the numerous exhibits they presented at the hearing for a temporary injunction, constituted their case. Defendant Leyden called as its witness Arthur Solomon, supervisor of the county clerk's map department. He testified as to the procedures of the clerk's office relating to disconnection of property from fire protection districts. Solomon stated that unless his office receives a fire protection district's petition to prevent disconnection of its property, the property is automatically disconnected by operation of law, upon its annexation by another municipal corporation. With respect to plaintiffs' land parcels that were the subject of the court's judgment in *In re Leyden Fire Protection District* (1972), 4 Ill. App. 3d 273, 280 N.E.2d 744, Solomon stated that these parcels were never disconnected because Leyden's attorney had filed a petition to prevent their disconnection and Solomon had had no further conversations with anyone involving that petition, or its disposition by the court.

On June 2, 1980, the trial court entered its final order, various provisions of which are the subject of this appeal. In granting plaintiffs' request for injunctive relief, the trial court held, among other things, that (1) as of June 2, 1980, Leyden's tax levy on plaintiffs' property would be considered "unauthorized"; (2) the levy and collection of 1979 real estate

---

[2] Defendants' original answer admitted that Leyden's property had been disconnected by law and that defendants had continued to wrongfully tax the property in question. At the April 30 hearing on the permanent injunction, however, the trial court permitted defendants to amend their answer to deny these allegations.

taxes upon plaintiffs' property would be permanently enjoined; (3) $87,800 of the funds collected pursuant to the trial court's March 6 sequestration order would be distributed to Leyden and that the balance would be transferred to a court-appointed trustee; (4) plaintiffs were not entitled to an accounting. On June 20, 1980, the trial court modified its June 2 "Final Order," after hearing Leyden's motion to stay enforcement of the judgment pending appeal. At that time the court held that (1) the county clerk could collect the second installment of the 1979 real estate taxes; (2) the sequestered funds and any future funds coming into the Cook County treasurer's possession would be turned over to the court's appointed trustee; and (3) any real estate taxes paid by plaintiffs' pursuant to the modified order would be deemed paid under protest pursuant to section 194 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 675).

The parties filed the appropriate notices of appeal from the June 2 order and interlocutory appeal from the June 20 modification order. These appeals were consolidated for our disposition.

OPINION

In simplest terms, the dispositive issue in this case is whether the post-disconnection extension of taxes on plaintiffs' properties was "unauthorized by law" as that term has been construed by Illinois courts. If not, plaintiffs were left to their statutory remedies and the trial court should have dismissed the complaint. After a careful review of the pertinent cases we reject plaintiffs' contention that the taxes were unauthorized.

■■ An often-stated principle is that an adequate remedy at law bars equitable relief. (*Finn v. Tucker* (1980), 81 Ill. App. 3d 1038, 402 N.E.2d 358.) This general rule is particularly appropriate in tax cases because the legislature has created an extensive statutory scheme for taxpayers to use in challenging their tax assessments; primarily, payment under protest. (Ill. Rev. Stat. 1979, ch. 120, pars. 675, 716.) "This preference for legal over equitable remedies in tax cases is to insure that taxing units will not face protracted delays in the necessary collection of taxes." (*Finn v. Tucker* (1980), 81 Ill. App. 3d 1038, 1040, 402 N.E.2d 358, 360, citing *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.) There are, however, two exceptions to this general rule: (1) the tax is unauthorized by law, or (2) the tax is levied upon exempt property. (*Finn v. Tucker; Clarendon Associates v. Korzen*.) In those cases, equitable relief is available regardless of the existence of adequate legal remedies. The first exception, the one relied upon by plaintiffs, has been narrowly construed. Our supreme court has noted that the question of unauthorized taxes goes to the "*power* of the assessor to function" rather than the "validity of the tax as levied." (*North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 548, 343 N.E.2d 507, 511.) If a tax is assessed pursuant to

statutory authority, mere procedural irregularities in the assessment of the tax do not form a basis for injunctive relief. See, *e.g., North Pier Terminal Co.; Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 52 N.E.2d 177.

In the pending case, plaintiffs urge this court to view defendants' extension and collection of taxes against their real property as unauthorized because of the disconnection of their property from the Leyden Fire Protection District. Plaintiffs contend that Leyden had no authority to tax their property because it can only tax property within its borders and the property in question is no longer within its borders. Based on our reading of the pertinent cases, however, we cannot agree with this theory.

As noted, whether a particular tax is unauthorized (as opposed to merely irregular) is determined by the taxing body's statutory power to tax. Three directly relevant cases which bear examination are *Lackey v. Pulaski Drainage District* (1954), 4 Ill. 2d 72, 122 N.E.2d 257; *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507; and *Dockside Development Corp. v. Tully* (1979), 78 Ill. App. 3d 482, 396 N.E.2d 1155.

In *Lackey* the taxpayers owned land that had been annexed to a drainage district. Plaintiffs sought to enjoin the district's tax assessment as being illegal and void because various statutory requirements had not been met prior to the entry of the annexation order. The Illinois Supreme Court held that, since the district had statutory authorization to impose the tax, the allegedly irregular and erroneous manner in which the taxing classification and assessment had been made was insufficient to make the tax unauthorized by law.

In *North Pier Terminal Co.* taxpaying lessees sought injunctive relief against the county assessor, who added their properties to the assessment books after the books had been certified as complete. Plaintiffs asserted that, under the applicable statute, they were entitled to notice and hearings prior to such action and that therefore the assessed taxes on their omitted properties were unauthorized. The court rejected this contention, holding that the assessor was empowered to revise the assessment books, even after certification, because there were no time limits in the statute which curtailed the exercise of his actual authority to assess taxes on omitted properties. Accordingly, the court concluded that "[t]he defects of which the plaintiffs complain are essentially procedural irregularities in the assessment process which, while they may have a bearing on the question of the validity of the taxes levied, do not establish the lack of authority of the assessor to act."

More recently, in *Dockside Development Corp.*, this court held that plaintiff had no right to an injunction against the collection of certain taxes, despite the assessor's apparent violation of provisions of the

Chicago Regional Port District Act and the Revenue Act of 1939. (Ill. Rev. Stat. 1975, ch. 19, par. 154.1; ch. 120, par. 500.19.) Through those statutes the assessor was empowered to tax either the value of the taxpayer's leasehold or the improvements thereon. Contrary to the statutes, however, the assessor had valued *both* the leasehold and certain "improvements" (which were actually plaintiff's personal property). In holding that the trial court improperly enjoined part of the tax, we stated that "the tax in question was authorized although irregular by being over-inclusive." *Dockside*, 78 Ill. App. 3d 482, 488, 396 N.E.2d 1155, 1160.

In each of these three cases the courts held equitable relief to be precluded because the taxing bodies in question were authorized by statute to tax plaintiffs' properties, despite alleged errors in the taxing process. The courts further stated that the taxpayers should have complied with the statutory procedures for protesting taxes. We follow the rationale of these cases and find that the taxes in issue here were not unauthorized by law. Leyden and the county tax officials clearly had the statutory power to assess and collect the taxes against plaintiffs' property. The disconnection of most of plaintiffs' property from the Leyden District did not remove this power, although defendants' continued taxation constituted an improper or irregular *extension* of the taxes. We believe that the apparent failure of the county clerk's office to receive notice of disconnections through the court's order in *In re Leyden* could have been remedied through other available means, such as the statutory payment under protest of sections 194 and 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, pars. 675, 716) or perhaps through a *mandamus* action to force the county officials to cease collecting plaintiffs' taxes for Leyden. Plaintiffs also could have objected to paying the first installment of their taxes at the appropriate time, under section 224.3 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 705.3). No payment of real estate taxes is required before the filing of an objection under that section.

■■ ■ We also note that although Leyden had continued to tax the members of plaintiffs' class for approximately eight years since the court's 1972 order, plaintiffs did not object to this continued taxation until the filing of the pending class action. Moreover, plaintiffs continued receiving fire protection services from Leyden during that time. We do not imply that plaintiffs consequently waived their right to relief; only that they attempted to avail themselves of a form of relief which has been permitted only in the rare circumstances of a tax "unauthorized" by law or a tax upon exempt property. Absent one of these grounds for equitable relief, the court has no power to grant an injunction in tax cases. As a matter of jurisdiction, of course, all circuit courts in Illinois are competent

to hear all justiciable matters. (Ill. Const. 1970, art. VI, §9.) Where the legislature has created a specific statutory remedy for certain types of actions, however, the plaintiff must exhaust those remedies before applying for further judicial relief. Hence, the circuit court generally may not review the actions of an administrative agency under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, pars. 264-79), until the agency itself has reached a final decision. (See *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) Similarly, taxpayers must challenge their real estate taxes under the relevant statutory procedures as a condition for obtaining relief. Thus, even though the result may appear somewhat harsh, the taxpayer may lose his right to a tax refund by failing to comply with the statutory provisions. Injunctive relief, available in the limited circumstances discussed, is therefore pursued at the taxpayer's risk. This is justifiable upon solid reasons of public policy, to protect the integrity of the taxing system. See *Clarendon; Dockside.*

In the pending case, these policy reasons remain persuasive, despite the disconnection of the majority of plaintiffs' properties from Leyden's boundaries. Leyden provides fire protection services for all residents of the unincorporated areas who have no other means of fire protection. Enjoining all of Leyden's tax funds pending disposition of this case has potentially endangered Leyden's ability to continue providing necessary services to those Leyden taxpayers who are not among plaintiffs' class.[3] And, as noted, Leyden continued to provide plaintiffs with these services, at least until July 1 of 1980, following the trial court's injunction orders.

■■ We believe that, regardless of the irregularity of the taxes, they were not "unauthorized" within the narrow meaning of that term; therefore, we hold that this action was not a proper one for injunctive relief. Consequently, we must reverse the trial court's orders. Because of our decision, we need not discuss the other issues raised. However, since our reversal effectively dissolves the injunction, we hold that the sequestered tax funds must be distributed to Leyden.

We emphasize that our opinion is not to be construed as permission for Leyden and the county tax officials to recommence the taxing of properly disconnected parcels of land. Although we have held the taxes to be "authorized" and that plaintiffs lost their rights to the sequestered 1979 tax payments by failing to follow their other remedies, we have no reason to believe that defendants will attempt to reinstate taxation on the parcels that were disconnected pursuant to the 1972 *In re Leyden* decision. As

---

[3] During the proceedings below, the trial court ordered various sums to be disbursed, thereby enabling Leyden to continue providing fire protection services and to meet its payroll. We also permitted a portion of the sequestered funds to be distributed to Leyden, pursuant to the parties' stipulation during oral arguments.

parties to this lawsuit, of course, the county clerk's office is on notice of these proceedings. This was not the case in the 1972 decision.[4]

For the foregoing reasons, we reverse the trial court's judgment and remand the cause with directions to vacate the injunctions, dismiss the complaint and distribute the taxes and interest to Leyden Fire Protection District.

Reversed and remanded, with directions.

LORENZ and MEJDA, JJ., concur.

---

[4] As Arthur Solomon's testimony indicated, the clerk's office never received notice of the court's disposition of the Leyden petition to prevent the disconnection of the plaintiffs' properties which had been annexed to Franklin Park. Thus, their records were not corrected at that time. We assume that the appropriate records will now be corrected.