FIFTH DIVISION

January 19, 2001

No. 1-99-3744

WILLIAM J. SULLIVAN, Indiv. and on ) Appeal from the

Behalf of Those Similarly Situated, ) Circuit Court of

) Cook County

Plaintiff-Appellant, ) 

) No. 94 CH 3945

)

THE BOARD OF COMMISSIONERS OF OAK ) Honorable 

LAWN PARK DISTRICT and DAVID HEILMANN, ) Sidney Jones III,

President, ) Judge Presiding.

Defendants-Appellees. )

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff William J. Sullivan (Sullivan) brought suit against the defendants, the Board of Commissioners of the Oak Lawn Park District (Park District) and its officers.  Sullivan protested the use of funds collected by the Park District under a museum tax levy and sought the refund of the part of his real estate tax that was used for the tax levy; however, he did not protest the tax.  Sullivan then brought a motion for class certification seeking to represent all similarly situated taxpayers in Oak Lawn.  In denying this motion, the trial court found that Sullivan was an inadequate representative.  The Park District then brought a motion for summary judgment which the trial court granted.  Ultimately, it found that plaintiff failed to protest the use of the funds and that he was guilty of 
laches
.  For the reasons that follow, we affirm.

This action focuses on the imposition and collection of a tax from plaintiff Sullivan by the defendant Park District.  From 1977 until the present day, the Park District has imposed a tax on the bills sent to plaintiff in the amount of .03% of the assessed valuation of the property.  The authority upon which defendants rely in imposing this tax is the Park District Aquarium and Museum Act (Act) (70 ILCS 1290/0.01 
et seq.
 (West 1998)), which provides in pertinent part:

"The corporate authorities of cities and park districts having the control or supervision of any public park or parks, are hereby authorized to * * * permit the directors or trustees of any corporation or society organized for the construction or maintenance and operation of an aquarium or museum as hereinabove described to erect, enlarge, ornament, build, rebuild, rehabilitate, improve, maintain and operate its aquarium or museum or museums within any public park now or hereafter under the control or supervision of any city or park district * * *." 

70 ILCS 1290/1 (West 1998).

Furthermore, the Act allows for levies for the purposes limited solely to establishing, acquiring, completing, erecting, rehabilitating, improving, operating, maintaining and caring for such aquariums and museums and the building and grounds thereof.  Any funds collected pursuant to the levy are required to be kept separate from the general operating funds of the district and village.  70 ILCS 1290/2 (West 1998).

Sullivan testified that in approximately 1980 he began to suspect that the funds being collected under the Park District levy were not being properly used and that they were being spent for purposes other than those for which the Act provides.  In addition, Sullivan claims that he began to question the validity of the tax levy at board meetings with Park District counsel and was always reassured that the tax was validly imposed and that the Park District needed to accumulate money to buy a museum building.

During the time frame of this litigation, Sullivan held various positions, including a time where he was president of the Oak Lawn Historical Society--an Illinois nonprofit organization.  The Historical Society is not a museum, and plaintiff claims that it is not affiliated with Oak Lawn or the Park District in any manner.  Occasionally, the Historical Society was hired by the Village of Oak Lawn to assist in community activities and to perform some work for the Park District.  At one point, the Historical Society prepared a feasibility study on the possible use of schools as museums.  However, plaintiff asserts that at no time did he ever receive any payment directly from nor did he ever bill the Park District.  All of Sullivan's salary and expense payments came from the Historical Society, which at one time amounted to approximately 20% of his income.  Although the Historical Society did receive some donations, the majority of its funds came from the Park District.

Defendants note that after the plaintiff prepared the feasibility studies on the use of two different schools as possible museum sites and authoring various memoranda regarding site selection and budget framework, he concluded that the Clark grammar school could be used as a museum.  Plaintiff also performed other tasks for the Park District on behalf of the Historical Society.  This included preparing the history of the Park District, working on the Wabash Centennial Project, and working on the old-fashioned Christmas program.   At one point, plaintiff admitted that he had received funds from the Park District's museum fund and that he agreed to assist the Park District with its plans concerning a museum.

Plaintiff also testified that the money paid to the Historical Society from the Park District was deposited in the operating account of the Historical Society.  And, when plaintiff was asked whether there were records reflecting the exact amount of money he received from the Park District and from any other sources, he replied, "I hope so."  However, plaintiff never retrieved the records. 

In May of 1994, Sullivan brought this action seeking various forms of relief.  He alleged that no museum was created pursuant to the Act and the funds for the levy were not being properly spent.  Initially, he sought an injunction that would stop the Park District from improperly using the funds as well as return the funds already improperly used.  Defendants filed a motion to dismiss and alleged that they had a museum and that plaintiff's claims were barred by the "voluntary payment doctrine."  Defendants' motion was denied.

On May 26, 1998, plaintiff filed his motion for class certification.  The trial court heard various discovery-related motions pertaining to this class certification and entered and continued the motion for class certification.  During this phase of the litigation, the cause was transferred to another judge, who completed the class certification discovery.  Plaintiff notes, in particular, that he filed a motion to strike conclusory affidavits which defendants offered in opposition of class certification.  The newly assigned judge denied the motion and held a hearing on class certification on July 21, 1999.

At the hearing, defendants opposed class certification and argued that plaintiff's claim was barred by the voluntary payment doctrine and that plaintiff was an inadequate representative because the Historical Society did, in fact, work for the Park District.  The trial court denied the motion for class certification, reasoning that plaintiff had waited to long to bring it and that he was "guilty of 
laches
, and therefore, an inadequate individual to represent the class."

Defendants then filed a motion for summary judgment and argued that the voluntary payment doctrine and 
laches
 barred plaintiff's claim.  Defendants did not, however, contest the Park District's inappropriate use of the museum funds, nor did they argue that a properly created museum or aquarium had been created.  On September 15, 1999, the trial court conducted a hearing on the summary judgment motion and held that all of plaintiff's claims were barred by 
laches
 and his failure to protest when he made his payments of his property tax bills.  Plaintiff now appeals.

As this court noted in 
Abrams v. State Farm Fire & Casualty. Co.
, 306 Ill. App. 3d 545, 548 (1999), our review of the trial court's decision is 
de novo
:

"Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits, when taken together and in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 1996); 
Majca v. Beekil
, 183 Ill. 2d 407, 416, 701 N.E.2d 1084 (1998).  We review the trial court's granting of a summary judgment 
de novo
. 
In re Estate of Rennick
, 181 Ill. 2d 395, 401, 692 N.E.2d 1150 (1998)."

In ruling on a motion for summary judgment, the court must construe the pleadings, depositions, and affidavits strictly against the movant and in favor of the opposing party.  
Dowd & Dowd, Ltd. v. Gleason
, 181 Ill. 2d 460, 483 (1998).  Where reasonable persons could draw divergent inferences from the undisputed material facts or where reasonable minds could differ as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.  
Espinoza v. Elgin, Joliet & Eastern Ry.
, 165 Ill. 2d 107, 114 (1995). 

We are mindful that a trial court's ruling on a class certification issue will not be disturbed absent an abuse of discretion.  
Brown v. Murphy
, 278 Ill. App. 3d 981, 990 (1996); 
Purcell & Wardrope Chartered v. Hertz Corp.
, 175 Ill. App. 3d 1069, 1074 (1988).
  However, an appellate court may affirm a trial court's grant of summary judgment on any grounds that properly appear in the record, regardless of whether the trial court relied on them.  
International Insurance Co. v. Rollprint Packaging Products, Inc.
, 312 Ill. App. 3d 998, 1007 (2000), citing 
Arthur v. Lutheran General Hospital Inc.
, 295 Ill. App. 3d 818, 823 (1998).  Because we affirm the trial court's entry of summary judgment on the voluntary payment doctrine, we need not discuss the class certification and 
laches
 issues or effectuate their standards of review.

Plaintiff asserts that the trial court erred in applying the voluntary payment doctrine and in finding that plaintiff was required to protest his property tax payment where the purpose of the tax levy has failed.  This court recently set out the essence of the voluntary payment doctrine in 
Dreyfus v. Ameritech Mobile Communications, Inc.
, 298 Ill. App. 3d 933, 938 (1998):

"Under the voluntary payment doctrine, ‛money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal.' 
Smith v. Prime Cable
, 276 Ill. App. 3d 843, 847 (1995).  A payment is involuntary if (1) the payor lacked knowledge of the facts upon which to protest the payment at the time of payment, or (2) the payor paid under duress.  
Getto v. City of Chicago
, 86 Ill. 2d 39, 48-49 (1981).  In other words, to negate the applicability of the doctrine, plaintiff must ‛not only show that the claim asserted was unlawful but also that payment was not voluntary, that there was some necessity which amounted to compulsion.  [Citations.]'  
Smith
, 276 Ill. App. 3d at 848." 

This court in 
Dreyfus
 also outlined what is required of a plaintiff to show that his payment was made under compulsion:

"[T]oday, the nature of the duress sufficient to establish compulsion has broadened and * * * recovery of a voluntary payment made under a claim of right can occur ' ‛ "[w]here a person, to prevent injury to himself, his business or property, is compelled to make payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to effectively resist such demand." ' [Citations.]  Protest may also serve as evidence of compulsion and an unwillingness to pay;  however, it does not conclusively establish compulsion where compulsion is disproved by other circumstances.  
Smith
, 276 Ill. App. 3d at 849."  
Dreyfus
, 298 Ill. App. 3d at 938. 

While conceding the existence of the doctrine, plaintiff maintains that the use of it in the present case is improper given the character of the levy.  Therefore, he asserts, no protest should be required.

Plaintiff first argues that Illinois law provides different treatment for taxes levied for general purposes and those designed for specific, special purposes.  For this, he references 
Bradford v. City of Chicago
, 25 Ill. 349 (1861).  In summarizing the trial court's reasoning in that case, the Illinois Supreme Court noted:

"The [trial] court then remarks upon the difference between taxes and assessments, the first being laid for ordinary revenue purposes, and assessments exclusively for benefits.  In the case of assessments, the court says: the money raised by them is held 
in trust
 by the public, to be devoted to the particular purpose of benefit intended.  It does not become a part of the general revenue, and may not be diverted from the improvement in view, and an injunction would lie in a proper case, to prevent a misapplication of the fund." (Emphasis in original.)  
Bradford
, 411 Ill. at 351-52.

In other words, with regard to an assessment:

"The rule is established in England, that a plaintiff having paid his money for shares in a concern which never came into existence, or a scheme which was abandoned before it was carried into execution, has paid it on a consideration which has failed, and may recover it back as money had and received to his use, unless he can be shown to have consented to, or acquiesced in the application of the money which the directors may have made.  
Nockels v. Crosby 
et al.
, 3 Barnswall & Cresswell, 814; 
Kempson v. Sanders
, 13 Eng. C. L. 321; 
Walstab v. Spotteswoode
, 15 Meeson & Welsby, 515." 
Bradford
, 25 Ill. at 360. 

Plaintiff also cites similar language in 
Cohon v. Oscar L. Paris Co.
, 17 Ill. App. 2d 21 (1958).  There, this court also summarized the trial court's reasoning in that case:

"‛Even where a tax is legally levied and voluntarily paid, if the purpose of the tax fails or the object is lawfully abandoned, the money which is held in trust to be devoted to the particular purpose may be recovered back in an action for money had and received.  
Bradford v. City of Chicago
, 25 Ill. 349
.'"
  
Cohon
, 17 Ill. App. 2d at 26.
 

Since plaintiff is questioning whether the purpose of the levy has been abandoned rather than whether the levy itself is proper, he argues that an action to recover the funds is appropriate and that the voluntary payment doctrine, with all its trappings, is inapplicable. Consequently, because defendants offered no evidence to support the appropriate use of the levy or even the existence of a museum, plaintiff argues that defendants' motion for summary judgment should have been denied.

Defendants' response is to reiterate what is required of a plaintiff in Illinois if he chooses to challenge the propriety of a tax.  Namely, defendants cite 
In re
 Rosewell
, 236 Ill. App. 3d 165 (1992), for setting forth the specific procedure:

"The requirements are essentially (1) the tax must be paid in full and under protest; and (2) the taxpayer must appear and file an objection in the circuit court at the time the collector makes application for a judgment."  
Rosewell
, 236 Ill. App. 3d at 169-70.

Defendants then relate the statute which was in effect at the time plaintiff's cause of action allegedly arose in 1980:

"§ 194.* * * 

If any person desires to object pursuant to Section 235 of this Act to all or any part of a real property tax for any year, for any reason other than that the real estate is not subject to taxation, he shall pay the tax installments as they become due, and each installment payment shall be accompanied by a writing, substantially in the following form[.]"  Ill. Rev. Stat. 1979, ch. 120, par. 674.

The statute then lays out the required form for the written objection and the required manner for presenting it.

Here, plaintiff did not file any written objection of any sort.  In fact, the only "protests" ever made by plaintiff were his oral objections at the Park District's board meetings, the dates of which he cannot remember.  Defendants point to the interrogatory concerning this issue:

"6.   Identify any occasions, if any, that the Plaintiff protested the tax referred to in First Amended Complaint, include, the date(s), time(s), place(s), and if anyone was present include their name, address, and telephone number.

ANSWER: Plaintiff is unable to provide dates, times, places, or the specific name, address and telephone number of anyone present when protest was made but sets forth, in answer to this interrogatory, that protest was made by plaintiff in both formal and informal settings, at Park District meetings and with local government authorities since approximately 1985." 

However, defendants assert that the law is clear:  the only real estate taxpayers who are ever eligible for a refund under law are those who have filed an objection on their own behalf or those who lack the knowledge of facts upon which to protest payment at time of payment.  
Rosewell
, 236 Ill. App. 3d at 172; 
Dreyfus
, 298 Ill. App. 3d at 938.

  Although not cited by either party, this court has previously discussed the circumstances under which a taxpayer may file an action for equitable relief when challenging a property tax.  
Bass v. South Cook County Mosquito Abatement District
, 236 Ill. App. 3d 466 (1992), states:

"Under the principle known as the voluntary payment doctrine, taxes voluntarily paid, even if erroneously, cannot be recovered unless recovery is authorized by statute.  (
Getto v. City of Chicago
 (1981), 86 Ill. 2d 39, 426 N.E.2d 844;  
Inland Real Estate Corp. v. Oak Park Trust & Savings Bank
 (1983), 127 Ill. App. 3d 535, 469 N.E.2d 204.)   It is also a well-settled rule that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists.  
Clarendon Associates v. Korzen 
(1973), 56 Ill. 2d 101, 306 N.E.2d 299;  
R.D. Werner Co. v. Leyden Fire Protection District
 (1980), 91 Ill. App. 3d 587, 414 N.E.2d 1169.

Through the Revenue Act of 1939, the General Assembly has created a statutory scheme for taxpayers who wish to object to improper taxes to follow.  Sections 194 and 235 provide that if a taxpayer elects to object to all or part of a real property tax, the taxpayer must pay both installments of the tax which is due under protest (Ill. Rev. Stat.1989, ch. 120, par. 675) and file objections to the application for judgment (Ill. Rev. Stat. 1989, ch. 120, par. 716).  This statutory procedure is the usual vehicle through which a taxpayer obtains relief in taxation matters and has been held to be an adequate remedy at law. (
Clarendon Associates v. Korzen
, 56 Ill. 2d 101; 
Alexander v. County of Tazewell
 (1989), 181 Ill. App. 3d 1070, 537 N.E.2d 1139.)  The rationale for the payment-under-protest procedure is to protect the rights of the taxpayer while also ensuring that the functioning of government is not impaired by protracted delays in the collection of taxes necessary for the operation of governmental units. 
Clarendon Associates v. Korzen
, 56 Ill. 2d 101; 
Wolf v. Hynes
 (1985), 137 Ill. App. 3d 987, 485 N.E.2d 463; 
R.D. Werner Co. v. Leyden Fire Protection District
 (1980), 91 Ill. App. 3d 587, 414 N.E.2d 1169.

Although the statutory procedure is generally a taxpayer's exclusive remedy in tax cases (
Alexander v. County of Tazewell
, 181 Ill. App. 3d at 1074), there are two well-recognized exceptions under which equitable remedies are available without first following the statutory remedy.  Where the tax is unauthorized by law or is levied upon exempt property, a taxpayer may seek relief by way of injunction without demonstrating an inadequate remedy at law.  (
Clarendon Associates v. Korzen
, 56 Ill. 2d 101;  
Hoyne Savings & Loan Association v. Hare 
(1974), 60 Ill. 2d 84, 322 N.E.2d 833.)   However, absent a recognized ground for equitable relief, a taxpayer who seeks equitable intervention prior to following the statutory procedures risks the loss of his right to a tax refund in cases where equitable relief is found unwarranted.  
R.D. Werner Co. v. Leyden Fire Protection District
, 91 Ill. App. 3d at 594."  
Bass
, 236 Ill. App. 3d at 467-68.

In the case at bar, plaintiff is essentially arguing that the availability of equitable remedies is not limited to the two traditional exceptions and that the voluntary payment doctrine, along with its protest requirement, should also be inapplicable to situations where suit is brought to determine whether the purpose of a tax levy has failed or has been abandoned.  Similarly, the plaintiffs in 
Bass
 argued "that a taxpayer may obtain equitable relief before following the statutory procedure where special grounds exist, such as a fraudulently excessive assessment and the unavailability of an adequate remedy at law."  
Bass
, 236 Ill. App. 3d at 469.  In that case, plaintiff specifically argued that the assessment at issue was excessive because it was used to accumulate an illegal surplus of funds and that he lacked an adequate remedy at law because he was unaware of the alleged illegal surplus and improper expenditure of the funds from it until that information was disclosed in an audit of the district's finances.  
Bass
, 236 Ill. App. 3d at 469.  

In fashioning its holding, the 
Bass
 court analyzed the reasoning employed by the supreme court in 
Clarendon Associates v. Korzen
, 56 Ill. 2d 101 (1973), a leading case on the subject.  In 
Clarendon
, on interlocutory appeal, the court recognized that some courts had expanded the traditional limitations on equitable jurisdiction in tax cases by holding that equity may enjoin the collection of taxes where the assessment is so grossly excessive as to be constructively fraudulent.  
Bass
, 236 Ill. App. 3d at 469.  However, after reviewing the history of the Revenue Act of 1939 (Ill. Rev. Stat. 1989, ch. 120, par. 482 
et seq.
) and the rationale for requiring payment under protest, the 
Clarendon
 court reaffirmed the basic rule that the statute provided an adequate remedy even in cases alleging a fraudulent assessment.  The 
Bass
 court noted, "[t]he court held that only when the taxpayer demonstrated that the assessment was fraudulent 
and
 that the legal remedy was inadequate would equity assume jurisdiction.  (
Clarendon
, 56 Ill. 2d at 107.)  The court reasoned that to hold otherwise, ‛[t]he door would thus be opened for all constructively fraudulent assessment cases to be tried in equity, thereby bypassing the statutory requirement that taxes be paid under protest.' (
Clarendon
, 56 Ill. 2d at 108.)" (Emphasis in original.)  
Bass
, 236 Ill. App. 3d at 469.  In the end, the taxpayers in 
Clarendon
 were not found to have satisfied the burden of showing that the statutory remedy was an inadequate remedy at law, and the case was remanded for dismissal and for distribution of the taxes to the taxing bodies involved. 

The 
Bass
 court also analyzed the supreme court's reasoning in a similar case, 
Hoyne Savings & Loan Ass'n v. Hare
, 60 Ill. 2d 84 (1974).  There, the plaintiff–taxpayer sought an injunction restraining the collection of the 1971 taxes on a 50–acre plot of land.  Prior to the entry of an order in that case, the plaintiff brought another suit seeking the same relief for the tax year 1972.  In both actions, the trial court ordered the plaintiff to deposit the full amount of the taxes with the court and granted a refund to plaintiff of the amount found to be excessive.

On appeal, the supreme court in 
Hoyne
 considered the principles it had articulated in
 
Clarendon
, but given the particular context of that case, held that the taxpayer was entitled to partial equitable relief despite the existence of an otherwise adequate remedy at law because it found that remedy as applied in that case to be inadequate.  "The factors cited by the court included that the assessed valuation of the property, which had increased more than 25 times from the previous year without any improvements having been made to property, was grossly excessive; and that the assessment was based on the assessor's opinion that the best use of the property was commercial, despite that the property was zoned residential, and on his incorrect assumption that the property was fully improved with water and sewer services."  
Bass
, 236 Ill. App. 3d at 470.  These, combined with additional circumstances, led to "‛the formation of the total picture requiring equitable jurisdiction,'" (
Bass
, 236 
Ill. App. 3d
 at 470, citing 
Hoyne
, 60 Ill. 2d at 90) and the court affirmed the order of the trial court granting a refund for the excess taxes for 1971.  However, the court held that the facts warranting relief did not apply to the 1972 taxes because plaintiff was aware of the assessment long before the tax bills were received and chose not to pursue its statutory remedy.

Ultimately, the 
Bass
 court was unconvinced that the plaintiff in that case had provided "sufficiently compelling circumstances as are necessary, and which have been found in only a few rare cases such as 
Hoyne
, to require equitable intervention."  
Bass
, 236 Ill. App. 3d at 470.  It concluded that because plaintiff was seeking essentially the same remedy that would be available under the payment-under-protest procedure of the statute and because he did not allege that the assessment imposed a tax burden comparable to that in 
Hoyne
 so as to render his legal remedy inadequate, equitable relief was unwarranted.

In the present case, Sullivan is seeking a refund of the portion of his real estate taxes that has been collected under the levy.  As in 
Bass
, this is also relief that would have been available under the payment-under-protest procedure of the statute.  Further, there are no allegations or indications in the record that the levy imposed upon Sullivan is oppressive so as to render this legal remedy inadequate.  Moreover, the cases to which plaintiff cites are not supportive of his position that the voluntary payment doctrine should not apply.  For one, the supreme court's decision in 
Bradford
 occurred in 1861 – well before the Revenue Act provisions that are relevant in this case were enacted.  Secondly, Sullivan's reliance upon 
Cohon
 is misplaced; that case was dealing with a private company's misappropriation of taxes.  In short, the defendant in that case continued to collect a retail occupation tax from its customers after a court had previously held that it was not liable for the tax. 
Cohon
, 17 Ill. App. 2d at 23.  This court held that the customers were entitled to recover from the defendant the amount of taxes that they had tendered to it, as the tax proceeds simply did not belong to defendant.  
Cohon
, 17 Ill. App. 2d at 27.  We decline to read that holding as a wholesale renovation of the basic procedural requirements for an individual to make a tax protest.  Accordingly, summary judgment should be affirmed on this basis alone.

Based on our ruling, we need not consider whether Sullivan was an adequate representative of a class or whether he was guilty of 
laches
 in commencing this suit.

 Because the voluntary payment doctrine is to apply to all real estate tax objections save for a few well-established exceptions, because plaintiff has failed to demonstrate that he should fit under one of those exceptions which enable a party to receive equitable relief, and because he failed to comply with the protest requirement, we affirm the trial court's order granting summary judgment to the Park District.

Affirmed.

QUINN, P.J., and REID, J., concur.