THIRD DIVISION

March 31, 2000

No. 1--98--2381

INTERNATIONAL INSURANCE COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.    

Cross-Appellee, ) 

)

v. ) 

)

ROLLPRINT PACKAGING PRODUCTS, INC., )

a corporation; ADVANCED RETORT )

SYSTEMS, INC., a corporation; )

PAUL LIVINGSTON; RICHARD WOOD; ) 

and ROBERT DODRILL, ) Honorable

) Dorothy Kirie

Defendants-Appellees, ) Kinnaird,

Cross-Appellants. ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff International Insurance Company (International)
(footnote: 1) appeals from an order of the circuit court granting summary judgment in favor of defendants Rollprint Packaging Products, Inc., Advanced Retort Systems, Inc., Paul Livingston, Richard Wood, and Robert Dodrill (Rollprint) in International's declaratory judgment action seeking a declaration that International did not owe Rollprint a duty to defend and indemnify it in a federal civil rights lawsuit pursuant to a commercial general liability insurance policy (policy).  The trial court found that International owed Rollprint a duty to defend and entered summary judgment in favor of Rollprint for "reasonable" fees and costs incurred 
in Rollprint's defense of the federal action.  On appeal, International contends that the trial court erred: (1) in granting Rollprint's motion for summary judgment on International's duty to defend; (2) in awarding Rollprint $665,547.10 for Rollprint's fees and costs in defending the federal action; and (3) in failing to limit International's duty to defend Rollprint to the claims actually falling under the terms of International's policy.

Rollprint cross-appeals from the trial court's order granting summary judgment in favor of International based on the court's finding that International did not owe Rollprint a duty to indemnify it under the policy for the amount Rollprint paid in settlement of the underlying federal action following a jury verdict against Rollprint.  Rollprint also appeals the trial court's order denying it reimbursement of fees and costs associated with its prosecution of a counterclaim in the underlying federal action and its defense of International's declaratory judgment action.  On appeal, Rollprint contends: (1) the facts proven in the federal action fell within the offenses listed in International's policy requiring International to indemnify Rollprint for the amount Rollprint paid to settle 
the federal action following the jury verdict against it; (2) Rollprint was entitled to its fees and costs in prosecuting the counterclaim in the federal action because the claim was necessary to Rollprint's complete defense in that action; and (3) Rollprint was entitled to its fees and costs in defending against International's declaratory judgment action based on the policy language.  For the reasons set forth below, we affirm.    

On September 14, 1987, Rollprint Packaging hired Netzer Novissar (Novissar) as a product development specialist.  Rollprint is a corporation which provides packaging materials to the medical and food industries.  Advanced Retort Systems (ARS) is a subsidiary of Rollprint and serves as a sales and distribution agent for equipment.  Novissar also served as product development specialist for ARS.  Paul Livingston (Livingston) was a sales manager for Rollprint.  Richard Wood (Wood) was the vice president of Rollprint.  Robert Dodrill (Dodrill) was the president and chief executive officer of Rollprint.  

Rollprint discharged Novissar on September 19, 1991.  On September 23, Novissar filed a claim with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of age, national origin and religion, and retaliation.  On December 30, the EEOC issued Novissar a notice of the right to sue defendants on these claims. 

In March 1992, Novissar filed a 12-count complaint against defendants in the United States District Court, Northern District of Illinois.  Novissar's federal complaint alleged the following claims:  age discrimination and retaliation (count I); religion and national origin discrimination and retaliation (count II); violation of "42 U.S.C. Sect. 1981" (Count III); breach of express contract (count IV); intentional interference with contractual relations (count V); intentional interference with business expectancy (count VI); breach of implied contract (count VII); misappropriation of trade secrets (count VIII); rescission of assignment contract (count IX); conversion (count X); rescission of assignment contract (count XI); and intentional infliction of emotional distress (count XII).

Novissar's federal complaint stated the following allegations against Rollprint:

[Nonpublishable material removed under Supreme Court Rule 23].

43. On or about September 19, 1991 Livingston came into Novissar's office, falsely accused Novissar of wearing a recording device, physically frisked Novissar without permission, told Novissar he was fired and physically evicted Novissar from his office and from the building.

44. In the process of evicting and firing Novissar, Livingston did not give Novissar the opportunity to assemble and take with him the personal property including but not limited to the work papers, formulas, articles and other documents that Novissar had brought with him when he came to work for Rollprint ***." 

On May 8, 1992, Rollprint filed an answer and counterclaim to Novissar's federal complaint (Novissar action or lawsuit).  Rollprint's counterclaim alleged that Novissar misappropriated Rollprint's trade secrets.  On May 12, Rollprint asked its insurance broker to inquire whether International's policy would provide coverage or a defense for Novissar's federal lawsuit.  

The policy issued by International to Rollprint, effective from October 1, 1990, 
to October 1, 1991, stated in relevant part:

"COVERAGE A

1. Insuring agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B. *** The 'bodily injury' or 'property damage' must be caused by an 'occurrence.' *** We will have the right and duty to defend any 'suit' seeking those damages.  

***

'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  

***

COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY

Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.  We will have the right and duty to defend any 'suit' seeking those damages. ***

***

SECTION V-DEFINITIONS

10. 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies; 

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

e.  Oral or written publication of material that violates a person's right of privacy."

On September 9, 1992, International denied coverage for the Novissar action in a letter to Rollprint.  Among its reasons for denying coverage, International stated that the "Personal Injury Coverage" did not apply to Novissar's lawsuit because none of the counts nor the prayer for relief sought relief for injuries or damages arising out of the commission of any of the offenses listed under that section (
i
.
e
., false arrest, detention, or imprisonment; malicious prosecution; wrongful entry or eviction; libel or slander; or violation of privacy).  

On March 13, 1993, International filed a declaratory judgment action against Rollprint and Novissar with respect to these coverage issues.
(footnote: 2)  The complaint contained eight counts which mirrored the arguments made by International in its letter to Rollprint denying coverage for the Novissar claim.  Rollprint filed a counterclaim which stated that the allegations in paragraph 43 of Novissar's complaint constituted allegations of "false arrest, detention, or imprisonment" and "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies" within the meaning of the policy's "personal injury" coverage triggering International's duty to defend Rollprint under the policy. 

On March 31, 1995, following a two-week trial of the Novissar lawsuit, the federal district court entered judgment on the jury's verdict in favor of Novissar on two of the counts of his complaint, interference with business expectancy and "retaliation for opposing age discrimination," for which the jury awarded Novissar $250,000 and $87,000, respectively.  Rollprint subsequently settled the lawsuit with Novissar.  

Thereafter, the parties in the present action filed cross-motions for summary judgment on the issues of whether International had a duty to defend and to indemnify Rollprint in connection with Novissar's lawsuit.  Rollprint contended that the Novissar complaint alleged facts potentially bringing his federal claims within coverage under International's policy for wrongful entry into or eviction from an area a person occupies and for false arrest, detention, or imprisonment.  Rollprint further argued that the policy required International to indemnify Rollprint for the costs of settling the Novissar lawsuit, including Novissar's claim for attorney fees, after the jury's verdict in favor of Novissar on two of his counts against Rollprint.  Rollprint claimed that the facts proven by Novissar in his federal trial supported Novissar's claims for the offenses listed under the policy's "personal injury" coverage.   

International denied that the allegations in the Novissar complaint triggered a duty to defend Rollprint in that action because Novissar failed to properly plead any causes of action against Rollprint for wrongful entry into or eviction from premises Novissar was occupying or for false arrest, detention, or imprisonment.  International also argued that it did not have a duty to indemnify Rollprint for the costs of settling the Novissar lawsuit because the jury did not return a verdict for Novissar on any cause of action actually falling within the policy's coverage provisions.  

On June 24, 1996, following hearings on the pending motions, the trial court entered an order: (1) granting Rollprint's motion for summary judgment, finding that International owed Rollprint a duty to defend, and denying Internationals' motion on the same issue; (2) granting International's motion for summary judgment, finding that International owed no duty to indemnify Rollprint,  and denying Rollprint's motion on the same issue; and (3) declaring these judgments were only partial judgments, and continuing the matter for a determination of actual damages based on International's failure to defend Rollprint.

[Nonpublishable material removed under Supreme Court Rule 23].

The trial court also found that the jury's verdict in favor of Novissar in his federal action was based on "interference with business expectancy" or "retaliation for opposing age discrimination," and that these claims did not actually fall within the specific offenses covered by the policy.  The trial court, therefore, found International owed Rollprint no duty to indemnify it for its settlement of the Novissar lawsuit.

The parties then filed cross-motions for summary judgment, seeking a declaration as to whether Rollprint was entitled to recover its fees and expenses for prosecuting its counterclaim against Novissar in the federal lawsuit.  Rollprint also sought payment of its attorney fees and expenses incurred in defending International's declaratory judgment action.  

On April 23, 1997, the trial court entered orders granting both of International's cross-motions and denying Rollprint's cross-motions, holding that the policy did not provide coverage for Rollprint's fees or expenses in Rollprint's prosecution of the counterclaim against Novissar or for the defense of the present declaratory judgment action.  

On July 14, 1997, International filed a motion to apportion attorney fees and costs.  International argued for a change in existing law and asked the trial court to apportion fees by holding International responsible only for the portion of the fees and costs generated in the Novissar suit actually related to the issue of wrongful eviction.  On August 7, the trial court denied the motion. 

On August 25, 1997, Rollprint filed a motion for entry of final judgment, seeking $1,046,929.12 in attorneys' fees and $86,275.63 in costs in relation to the defense of the Novissar lawsuit.  In support of its motion, Rollprint relied on redacted fee and costs statements (redacted to exclude fees and costs related to Rollprint's counterclaim against Novissar for which the trial court had denied reimbursement) and a number of affidavits from attorneys and Rollprint's own employees indicating the basis for the fees, hourly rates, tasks accomplished, costs, and the number of personnel involved in the litigation.    

In response to Rollprint's motion, International filed an affidavit by Steven Hartman (Hartman), a partner and the head of the employment law group at Freeborn & Peters in Chicago.  Hartman averred that he believed that many of the fees charged for the defense of the Novissar suit were not reasonable or customary.  He described the Novissar suit as a rather typical, single-plaintiff employment law case.  Based on a slight increase in fees charged  regarding the trade secrets issue involved, Hartman estimated the defense of a case such as the Novissar suit should generate approximately $250,000 in fees.  He was critical of the number of attorneys and supporting staff used by Rollprint and the amount of time spent on various tasks.  Hartman also criticized the "block billing" procedure used by Rollprint's attorneys and argued that specific "task-based billing" was customary in employment law since the 1990's.  

On April 20, 1998, a hearing was held on the issue of fees and costs.  Hartman, International's expert witness, offered testimony, consistent with his affidavit, that was critical of Rollprint's bills.  George Vernon, one of Novissar's attorneys in the federal action, testified under subpoena.  He stated that the trade secret aspect of the Novissar lawsuit involved several experts and was only dropped a short time before trial.  Vernon did not believe the Novissar lawsuit was "typical" based in part on the large amount of "ill will" between the parties.  Vernon estimated that the three attorneys who represented Novissar through his trial generated fees in the range of $675,000 to $700,000.  He estimated that he alone spent 1,600 to 1,700 hours working on the case.  

On June 1, 1998, the trial court ordered that International reimburse Rollprint $665,547.10 for attorneys fees and $86,275.63 for costs incurred in the defense of the Novissar suit.  The trial court found that "the Rollprint defendants [had] submitted detailed contemporaneous records containing facts and computations upon which the charges [were] predicated, showing (1) the services performed, (2) by whom the services were performed, (3) the time expended, and (4) the hourly rate as required by 
International Ins. Co. v. City of Chicago Heights
, 268 Ill. App. 3d 289, 300 (1994); 
Prior Plumbing and Heating Co. v. Hagins
, 258 Ill. App. 3d 683, 687 (1994) ***."  

The trial court did not agree that the Novissar suit was "typical" based on a number of factors, including the ill will between the parties and the number of counts and trade secrets involved.  The trial court was critical of the bills for failure to break down the time spent into particular tasks, but it did find the bills to be sufficiently detailed in all other respects.  The trial court also noted the disparity in the time billed by opposing counsel in the Novissar lawsuit; 3,500 hours for the plaintiffs and 10,000 hours for the defendants.  The court reduced the fees that would be allowed in three areas because it found that the fees were either excessive or the tasks were not necessary.  The court made the following deductions: (1) $88,877.64 from the fees for mediations; (2) $240,004.38 from the fees for the summary judgment motions; and (3) $52,500 from the fees for the research.  This appeal and cross-appeal followed.  

International's Appeal

International first argues that the trial court erred in granting Rollprint's cross-motion for summary judgment and finding that the allegations in the Novissar federal complaint triggered International's duty to defend Rollprint under the policy.  Specifically, International contends that the Novissar allegations did not sufficiently state any of the following causes of action necessary to invoke the policy's "personal injury" coverage: (1) wrongful entry or eviction; (2) false imprisonment, detention, or arrest; (3) libel or slander; or (4) invasion of privacy.  Based on the trial court's rulings, International focuses primarily on the issue of "wrongful eviction," arguing that the allegations of the Novissar complaint do not specifically plead or seek remedies for such a cause of action.  International also argues that because Novissar did not have a vested or legal interest in the premises he was evicted from, the policy does not provide coverage for the alleged eviction. 

Rollprint contends that the Novissar complaint does not need to specifically allege "causes of action" for these offenses to invoke coverage.  Rollprint maintains that the Novissar complaint contains sufficient factual allegations of the offenses listed under "personal injury" in the policy, including "wrongful eviction," to bring the claims potentially within coverage and trigger International's duty to defend.  Rollprint further contends that Novissar was not required to have a vested or legal interest in Rollprint's premises in order for his allegations to fall under the term "wrongful eviction" as described in the policy.

In appeals from summary judgment rulings, we conduct a 
de
 
novo
 review.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill.2d 90, 102, 607 N.E.2d 1204 (1992).  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Outboard Marine
, 154 Ill. 2d at 90.  An appellate court may affirm a trial court's grant of summary judgment on any grounds that properly appear in the record, regardless of whether the trial court relied on them.  
Arthur v. Lutheran General Hospital
, 295 Ill. App. 3d 818, 823, 692 N.E.2d 1238 (1998).  Construction of an insurance policy is a question of law, and an interpretation of an insurance contract provision is appropriate on a motion for summary judgment.  
Z.R.L. Corp. v. Great Central Insurance Co.
, 156 Ill. App. 3d 856, 858, 510 N.E.2d 102 (1987).  Where a provision in an insurance policy is ambiguous and subject to different interpretations, the ambiguity is to be construed in favor of the insured.  
Z.R.L.
, 156 Ill. App. 3d at 860.  

An insurer's duty to defend against a third-party's action against the insured is determined by the allegations of the complaint.  
Western Casualty & Surety Co. v. Adams Co.
, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066 (1989).  An insurer's refusal to defend an action against the insured is not justified unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.  The duty to defend does not depend on the probability of recovery.  
Western Casualty
, 179 Ill. App. 3d at 756.  Additionally, the duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy.  The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.  
Western Casualty
, 179 Ill. App. 3d at 756.  The complaint against the insured should be liberally construed.  
Western Casualty
, 179 Ill. App. 3d at 757.  

In 
Z.R.L.
, the plaintiff insured filed a declaratory judgment action against the defendant insurer to determine rights and responsibilities under a liability insurance policy.  The trial court granted summary judgment in favor of the insured, holding that the insurer had a duty to defend the insured in a federal lawsuit.  
Z.R.L.
, 156 Ill. App. 3d at 857.  The underlying lawsuit involved claims for racial discrimination against the insured which operated a club from which individuals had been forced to leave.  The personal injury liability provisions of the policy stated that the insurer would pay all sums for which the insured had become legally obligated to pay for injuries "arising out of an occurrence involving one or more of the following offenses: false arrest, malicious prosecution, detention, imprisonment, libel, slander, defamation of character, invasion of privacy, wrongful eviction or wrongful entry."  
Z.R.L.
, 156 Ill. App. 3d at 858.  The insured argued that the underlying action arose from a "wrongful eviction" from the club, but the insurer denied coverage.  
Z.R.L.
, 156 Ill. App. 3d at 858.  The 
Z.R.L.
 court affirmed the trial court's grant of summary judgment to the insured.  The court held that "wrongful eviction" included making a patron leave a restaurant and the court would not distinguish an insured's removal of a rowdy patron off of the premises from the removal of a patron for racial discrimination.  
Z.R.L.
, 156 Ill. App. 3d at 859.  The court also held that even if the meaning of "wrongful eviction" was ambiguous, the insured "should be deemed covered." 
Z.R.L.
, 156 Ill. App. 3d at 859.  

 In the present case, International's policy contains language similar to the language in the 
Z.R.L.
 policy.
  Novissar brought the underlying federal lawsuit primarily based on claims for violations of his civil rights, retaliation, and misappropriation of trade secrets by Rollprint.  In support of his claims, Novissar made the following allegations:

"40. As part of defendants' [Rollprint's] pattern of harassment they, *** instructed employees of Rollprint to move boxes, spare furniture and other junk into Novissar's office; ***.

***

43. *** Livingston came into Novissar's office, falsely accused Novissar of wearing a recording device, physically frisked Novissar without permission, told Novissar he was fired and physically evicted Novissar from his office and from the building." 

Based on the above allegations and the specific offenses listed in the definition of "personal injury" in the policy,
 International did have a duty to defend Rollprint in the Novissar lawsuit because of the potential for coverage.  Although Novissar did not explicitly seek a "cause of action" for "wrongful eviction," the factual allegations in Novissar's complaint indicate that the injuries claimed by Novissar may have "arisen from" wrongful eviction from his office.  Thus, at the very least, the allegations suggested the potential for coverage for the actions of Rollprint. 

The 
Z.R.L.
 case and other cases cited by the parties do not require the third-party, here Novissar, to have a vested or legal interest in the premises from which he was being evicted.  The policy here refers only to evictions from a "room, dwelling, or premises the person occupies." It is undisputed that Novissar was evicted from the office he was occupying on Rollprint's premises.  The Novissar complaint alleged that this eviction, among Rollprint's allegedly other wrongful acts, was part of a pattern of discrimination and retaliation against Novissar.  There is no indication in this provision of the policy that a vested or legal interest is required for coverage for "personal injuries" to a third-party arising out of a wrongful entry into or eviction from the premises.  Even assuming that plaintiff's interpretation of the definition of "wrongful eviction" is a reasonable alternative in this case, the existence of a reasonable alternative would indicate that the term is ambiguous and subject to more than one interpretation. Such an ambiguity must be construed against International, the insurer, in favor of Rollprint, the insured.  Based on these allegations, we hold that International owed a duty to defend Rollprint in the Novissar lawsuit. 

International further contends that it owed no duty to defend Rollprint because the Novissar complaint also failed to sufficiently allege any specific counts for the other offenses listed under the definition of "personal injury" in the policy.  International argues the Novissar complaint failed to plead the necessary elements of false arrest or detention, libel or slander, or invasion of privacy.  Because International's duty to defend Rollprint was triggered by the allegations describing a "wrongful eviction," it is not necessary to address these additional arguments.  Novissar's allegations of "wrongful eviction" alone are enough to affirm the trial court's grant of summary judgment to Rollprint on the duty to defend.  

[Nonpublishable material removed under Supreme Court Rule 23].  

International next contends that the trial court abused its discretion in awarding attorney fees and costs to Rollprint as  reimbursement for the defense of the Novissar lawsuit.  International argues that based on a review of the fee statements provided by Rollprint, there was an absence of evidence in the record to determine that the number of hours billed and that many of the services performed in defense of the Novissar lawsuit were reasonable.  International specifically criticizes the number of hours and amounts billed for certain tasks such as the $340,000 in bills for the preparation and prosecution of a summary judgment motion against Novissar.  International maintains that many of the tasks performed were duplicative and unnecessary, including portions of the summary judgment motion against Novissar.  International further claims that Rollprint's attorneys over-billed for certain routine tasks and research.  International argues that Rollprint's use of "block billing" rather than more specific "task-

based billing" also failed to create an objective standard from which the trial court could have judged the reasonableness of the Novissar defense bills.  International further argues that the trial court failed to follow its own recognized guidelines in determining a reasonable amount of fees and costs.

Rollprint contends that its fee statements did present a sufficient basis for the trial court to determine a reasonable fee by submitting records proper in form which showed: "(1) the services performed, (2) by whom the services were performed, (3) the time expended, and (4) the hourly rate.  Rollprint further argues that the Novissar lawsuit was not "typical" and involved fiercely contested issues regarding technical and sensitive trade secret information, increasing the hours and costs necessary to successfully defend the action.

A trial court is given broad discretion in the award of attorney fees, and the award will not be overturned unless the court abuses its discretion.  
In re Estate of Healy
, 137 Ill. App. 3d 406, 411, 484 N.E.2d 890 (1985).  A reviewing court is not justified in disturbing an award only because it may have made a different award.  
Healy
, 137 Ill. App. 3d at 411.  The trial court may accept or reject the testimony of the parties' experts in determining the award, and the trial judge may rely on his or her own experience and knowledge to determine the time required to complete similar activities.  
Healy
, 137 Ill. App. 3d  at 411. 

The award of attorney fees should reflect compensation for work reasonably required.  
Healy
,  137 Ill. App. 3d at 410.  The party seeking attorney fees has the burden of presenting sufficient evidence of the reasonableness of the fees.  
Kaiser v. MEPC American Properties, Inc.
, 164 Ill. App. 3d 978, 983, 518 N.E.2d 424 (1987).  Justification of a fee must include more than just a compilation of hours multiplied by a fixed hourly rate or bills issued to a client.  
Kaiser
, 164 Ill. App. 3d at 984.  A petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate.  
Kaiser
, 164 Ill. App. 3d at 984.  The trial court should also look at additional factors such as the skill of the attorneys involved, the nature of the case, the novelty and/or difficulty of the issues and work, the importance of the matter, the responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a reasonable connection between the fees and the amount involved in the litigation.  
Kaiser
, 164 Ill. App. 3d at 984; 
Healy
, 137 Ill. App. 3d at 409-10. 

The record in the present case shows that the trial court conducted an extensive review of the fee statements submitted by  Rollprint.  The court considered International's expert's criticism of the fee statements.  The trial court also heard testimony from the witnesses presented at the hearings on this issue and reviewed the briefs and numerous exhibits from each side.  Rollprint sought a total of $1,133,204.75 in attorney fees and costs for the defense of the Novissar lawsuit.  International's expert, Hartman, made a number of criticisms of this amount in his affidavit and during his oral testimony.  Hartman believed that the defense should have been conducted for an amount in the range of $250,000.  As stated above, the trial court was not required to accept these recommendations.

The trial court noted that the Novissar lawsuit was fiercely contested and lasted approximately four years through the end of trial.  Based on the trial judge's own experiences, she was of the opinion that the Novissar lawsuit was not a "typical" employment case because of a number of factors, including the number of counts in the complaint, the trade secret issues involved, a Rule 11 sanctions motion, and the ill will between the parties throughout the litigation.  Although the trial court agreed with International that "task-based" billing is preferable for justification of attorney fees awards, it did find that Rollprint had submitted "detailed contemporaneous records containing facts and computations *** showing (1) the services performed, (2) by whom the services were performed, (3) the time expended, and (4) the hourly rate[.]"  This information is all that the case law cited by the parties requires.

The trial court also agreed with a number of the criticisms made by Hartman and reduced the fees requested in the areas of research, the summary judgment motion, and the mediations.  The trial court made a substantial deduction of $381,382.02, leaving Rollprint entitled to fees of $665,547.10.  This total is comparable to the amount of fees generated by Novissar's three attorneys in the prosecution of the federal case.  One of Novissar's attorneys, George Vernon, estimated these fees to be in the range of $650,000 to $675,000.  There is no indication in the record that the trial court failed to review the evidence submitted or to consider the relevant factors or that it abused its discretion in any way in reaching the award.  We therefore find that the trial court's award of $665,547.10 in attorney fees and $86,275.63 in costs was proper.

Lastly, International contends that the trial court should have apportioned the fees to which its duty to defend applied.  International maintains that it was found to have a duty to defend Rollprint based on a very small percentage of the actual claims made in the Novissar lawsuit.  According to International, it should be required to reimburse Rollprint only for those fees and costs associated with defending that small percentage of claims, 
i
.
e
.  pertaining to Novissar's wrongful eviction claim.  Rollprint argues that Illinois law forbids an apportionment of attorney fees in such a manner and that it was entitled to reimbursement for all fees and costs incurred in the defense of the Novissar claim.  

An insurer's duty to defend extends to cases where the complaint contains several theories or causes of action against the insured and only one of the theories is within the policy's coverage and the others may not be.  
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 194, 355 N.E.2d 24 (1976); 
JG Industries, Inc. v. National Union Fire Ins. Co.
, 218 Ill. App. 3d 1061, 1067-68, 578 N.E.2d 1259 (1991).  International concedes in its brief on appeal that its argument is contrary to the well-settled rule that the duty to defend extends to all theories or causes of action in a complaint where at least one of them falls within the policy's coverage.  However, International argues that we should change existing law and find that it only had a duty to defend Rollprint in the Novissar lawsuit for the claims actually falling under the policy's coverage.  In light of the established case law on this issue, we reject International's argument and hold that the trial court properly denied International's motion to apportion fees.  

Rollprint's Cross-Appeal

Rollprint first contends that the trial court erred in granting International's motion for summary judgment based on its determination that International did not owe a duty to indemnify  Rollprint under the policy for the costs of settling the Novissar lawsuit.  Rollprint claims that the trial court failed to construe any ambiguities in favor of applying indemnity coverage in determining whether the facts proven at trial of the Novissar lawsuit fell under the policy's insurable offenses.  Specifically, Rollprint maintains that the facts proven in the Novissar lawsuit fell within the coverage for the following offenses: (1) wrongful entry or eviction; (2) false arrest, detention, or imprisonment; (3) slander or libel; and (4) invasion of privacy, as these offenses are defined by the policy.  International contends that the offenses for which Rollprint was found liable to Novissar, interference with business expectancy and retaliation for opposing age discrimination, were not offenses covered by the policy, and International did not owe a duty to indemnify Rollprint.  

The duty to defend is broader than the duty to indemnify.  
Outboard Marine
, 154 Ill. 2d at 127.  A duty to indemnify arises if the insured's activity and the resulting loss or damage 
actually
 fall within a policy's coverage.  
Outboard Marine
, 154 Ill. 2d at 128.  

In the present case, the trial court granted International summary judgment on this issue, and our review of its decision is 
de novo
.  Rollprint contends that Novissar did prove claims against it falling under the coverage of International's policy.  Rollprint argues that Novissar presented testimony during the Novissar trial that supports the claims for the offenses of "wrongful entry" or "wrongful eviction" against Rollprint based on Novissar's testimony that Rollprint instructed employees to move boxes, spare furniture and other storage items into his office; 
denied him access to documents, materials, and meetings required to do his job; falsely accused him of wearing a recording device and physically frisked him without "reasonable cause"; and physically evicted him from the office following his termination without allowing him to collect his personal belongings.  Additionally, Rollprint claims Novissar established "facts" supporting the "torts of false arrest, detention, or imprisonment at trial" based on his testimony that Rollprint physically restrained and frisked him without permission and ordered him "confined to his home."  Rollprint further argues that Novissar established the elements for slander based on his testimony at trial that Rollprint portrayed him as a dishonest person to an individual outside the company and that these "allegations" provided a portion of the factual basis for the counts on which the jury returned its verdict against it.  Lastly, Rollprint maintains that this testimony also supported Novissar's claim for invasion of privacy.  

Notwithstanding Rollprint's argument, the jury verdicts in the Novissar lawsuit do not contain any specific references to the offenses listed under "personal injury" in section V of International's policy.  When considering the parties' cross-motions for summary judgment on this issue in the present case, the trial court noted that the record was unclear regarding whether the jury considered any of these offenses when it found for Novissar on the counts for interference with business expectancy and retaliation for opposing age discrimination.  Although  Rollprint argues that the facts supporting a verdict for the offenses of wrongful entry and eviction, false arrest, detention or imprisonment, slander or libel, and invasion of privacy, as they are listed in the policy, were pled in the Novissar complaint and uncontested at trial, there is no indication in the verdict forms that the Novissar jury relied on or considered any of these offenses in finding for Novissar on the claims for interference with business expectations and retaliation for opposing age discrimination.  Neither of these two claims falls under any of the offenses listed in the policy.  The jury may have merely relied on the termination of Novissar as the single act of "retaliation" without considering the offenses described by plaintiff.  

Because there was no evidence in the record of special jury instructions or verdict forms indicating that the Novissar jury believed Rollprint's conduct 
actually
 fell within one of the offenses covered in the policy, we find that the trial court properly found that International did not owe a duty to indemnify Rollprint for the settlement Rollprint paid in the Novissar lawsuit.  

Rollprint next contends that the trial court erred in ruling that International's duty to defend Rollprint in the Novissar lawsuit did not encompass attorney fees and costs incurred in connection with Rollprint's counterclaim against Novissar.  Rollprint argues that the counterclaim was integral to its complete defense of the lawsuit and, therefore, should have been covered under the policy because both parties claimed ownership of the trade secrets at issue.  Rollprint maintains that without asserting ownership of the trade secrets, it could not have sought to enjoin Novissar's future use of the trade secrets.  Rollprint further argues that this "ownership" issue was the basis of Novissar's misappropriation counts, and filing the counterclaim helped limit its liability and encouraged settlement.

 International argues that Rollprint's counterclaim was "offensive" in nature because it sought to restrain Novissar from future use or disclosure of the trade secrets.  International distinguishes this type of counterclaim from defensive counterclaims such as third-party contribution and indemnity actions which seek to limit liability of an insured.  International also argues that the language of the policy only requires it to provide coverage for the "defense" of Rollprint.  International maintains that the counterclaim filed by Rollprint in the Novissar lawsuit was not a part of Rollprint's defense of that lawsuit, and International therefore is not responsible for reimbursing Rollprint for Rollprint's attorney fees and costs in relation to bringing the counterclaim.  

Neither party has cited to any Illinois authority directly addressing this issue and our research reveals none.  Both parties rely on authority from other jurisdictions.

We find 
Duke University v. St. Paul Mercury Insurance Co.
, 384 S.E.2d 36 (Ct. App. N.C., 1989), which International relies upon, applicable to the present case.  In 
Duke
, Duke  University had been sued by doctors as a result of Duke's proposed sale of a psychiatric hospital and the disbursement of various funds and accounts from the sale.  Duke filed a counterclaim against the doctors for various intentional torts, including defamation, interference with contract, and unfair trade practices.  Duke also filed a declaratory judgment action against its insurer in an effort to obtain coverage for the underlying lawsuit.  The 
Duke
 court found that the insurer did have a duty to defend Duke in the underlying case, but it also found that the trial court had correctly refused to award Duke legal fees incurred in connection with prosecuting its counterclaim because the insurer's policy only obligated it to "defend suits 'against' Duke."  
Duke
, 384 S.E.2d at 46.  

Like the policy at issue in 
Duke
, International's policy in the present case stated that International "will have the right and duty to defend any 'suit'," thus only obligating International to defend lawsuits brought against Rollprint for which the policy provided coverage.  Accordingly, based on the language of the policy, 
International was not obligated to bear the expenses of Rollprint's prosecution of its counterclaim against Novissar.  

We briefly note that Rollprint's reliance on 
Oscar W. Larson Co. v. United Capitol Insurance Co.
, 845 F. Supp. 458, 461 (W.D. Mich. 1993), is misplaced.  In 
Larson
, the district court found that an insurer, who had been found to owe a duty to defend the insured, also had a duty to provide coverage for certain counterclaims and cross-claims filed by the insured in an underlying action
 which sought "affirmative relief against other parties."  The district court also found that the counterclaims and cross-claims were "defensive in nature and prosecuted to limit or defeat plaintiff's [the insured's] liability [to a third party]."

Larson
 is distinguishable from the case at bar.  Rollprint admits that its counterclaim against Novissar sought to "enjoin" him from making any future use of the trade secrets for which ownership was contested by the parties in the Novissar lawsuit.  This situation is different from that where a third-party action or counterclaim, such as for contribution, is filed to limit a defendant's potential liability.  The counterclaim filed by Rollprint in the Novissar lawsuit was not necessary for the determination of ownership of the trade secrets which was already at issue in that lawsuit.  Rollprint's counterclaim against Novissar was comparable to any action Rollprint might have had to take to enjoin Novissar from using the trade secrets after his termination, even if he had not filed a lawsuit.  The counterclaim, therefore, was not defensive in nature.  We therefore find that the trial court properly denied coverage under the policy for Rollprint's counterclaim expenses.

Lastly, Rollprint contends that the trial court erred in finding that International's duty to defend it did not include coverage under the policy for attorney fees and costs incurred in defending the declaratory judgment action brought by International.  Rollprint claims that the language of the policy provides this coverage in the provision for "Supplementary Payments--Coverages A and B," which states that International will pay "All reasonable expenses incurred by the insured 
at our request
 ***."  (Emphasis added.)  Rollprint argues that International's declaratory judgment action is nothing more that an official "request" for Rollprint to assist in the determination of the parties' responsibilities in defending the Novissar lawsuit.  Alternatively, Rollprint claims that the phrase "at our request" is ambiguous and should be construed against the insurer in favor of coverage.

International contends an insured may not recover fees or costs for defending a declaratory judgment action brought by the insurer unless the insured shows vexatiousness on the part of the insurer.  International also asserts that the plain language of the "Supplementary Payments" section of the policy relied on by Rollprint refers to payments to be covered by the insurer for expenses incurred by the insured while providing "assistance" in defending claims or suits covered by the policy.

It is well settled in Illinois that an insured may not recover attorney fees and costs for 
bringing
 a declaratory judgment action against an insurer unless there is a showing of vexatious conduct on the part of the insurer.  
Brotherhood Mutual Insurance Co. v. Roseth
, 177 Ill. App. 3d 443, 453, 532 N.E.2d 354 (1988).  An insured may not recover fees and costs for 
defending
 a declaratory judgment action brought by the insurer.  
Roseth
, 177 Ill. App. 3d at 453; 
International Insurance Co. v. Chicago Heights
, 268 Ill. App. 3d 289, 301, 643 N.E.2d 1305 (1994).  

The relevant portion of International's policy in the present case states:

"SUPPLEMENTARY PAYMENTS--COVERAGES A AND B

We will pay, with respect to any claim or 'suit' we defend:

***

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work." 

We first observe that there were no findings, or even allegations, that International acted vexatiously in denying coverage or bringing its declaratory judgment action.  The policy language also does not indicate that the parties had an agreement that attorney fees and costs would be otherwise covered.  We therefore hold that the trial court properly granted International summary judgment on this issue and denied coverage for Rollprint's defense of International's declaratory judgment action.

For the reasons stated, we affirm the orders of the circuit court.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.  

FOOTNOTES
1:
On April 20, 1998, United States Fire Insurance Company was allowed to substitute as plaintiff as "assuming reinsurer." 

2:
This case involves a complex procedural history involving motions for judgment on the pleadings and numerous cross-motions for summary judgment.  We provide a summary of the parties' arguments and the trial court's rulings as are relevant to this order.