CULBREATH ISLES PROPERTY OWNERS ASSOCIATION, INC., Orline M. Sidman, as personal representative of the estate of Phyllis Ann Kirkwood, and Florida Policyholders, LLC, Plaintiffs,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Defendant.

Case No. 8:12–cv–2928–T–26EAJ.

United States District Court, M.D. Florida, Tampa Division.

Nov. 5, 2013.

James J. Wimsatt, Ronald Edward Bush, Hughes Hamilton Rice, III, Bush, Graziano, Rice & Platter, PA, Tampa, FL, Mark Paul Buell, Shirley Thompson Faircloth, Raymond T. Elligett, Jr., Buell & Elligett, PA, Tampa, FL, George A. Vaka, John Robert Sierra, III, Vaka Law Group, Tampa, FL, for Plaintiffs.

Andrew V. Tramont, Jr., Bradley B. Aserlind, Paulino A. Nunez, Jr., Rodriguez, Tramont, Guerra & Nunez, PA, Coral Gables, FL, for Defendant.

## ORDER

RICHARD A. LAZZARA, District Judge.

**THIS CAUSE** comes before the Court on Plaintiff Culbreath Isles Property Owners Association, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law with exhibits (Dkt. 61) and Statement of Undisputed Facts (Dkt. 62), Plaintiff Florida Policyholders, LLC's Motion for Summary Judgment and Incorporated Memorandum of Law with exhibits (Dkt. 63) and Statement of Undisputed Facts (Dkt. 64), Plaintiff Orline M. Sidman's Motion for Summary Judgment and Incorporated Memorandum of Law with exhibits (Dkt. 67) and Statement of Undisputed Facts (Dkt. 68), and Defendant Travelers Casualty and Surety Company of America's Cross–Motion for Summary Judgment and Incorporated Memorandum of Law with supporting exhibits (Dkt. 65) and Statement of Undisputed Facts (Dkt. 66). The parties have all filed memoranda and supporting exhibits in response to the motions (Dkts. 70, 72, 73, 74, 76, 79) along with Statements of Disputed Facts (Dkts. 71, 75, 77, 78).

### Central Issue

The sole question for resolution in this breach of contract action is whether an insurance policy issued by Defendant Travelers Casualty and Surety Company of America ("Travelers") to Plaintiff Culbreath Isles Property Owners Association ("Culbreath") indemnifies Culbreath for its liability for attorney's fees incurred by, and awarded to, individuals who Culbreath unsuccessfully sued.

### Statement of Facts

Defendant Travelers issued a Non–Profit Management and Organization Liability policy to Culbreath for the period of February 20, 2009 to February 20, 2010. (Dkt. 1, Ex. 2.) In relevant part, the Policy provides "Liability Coverage" such that:

> [t]he Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in item three of the Declarations which is incurred by the Insureds as the result of any Claim **first made against the Insureds** during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

(*Id.* at 1 ("Section I. INSURING AGREEMENTS A. Liability Coverage") (emphasis added.) and "Defense Coverage":

> [t]he Insurer shall have the right and duty to defend any Claim covered by this Policy, even if the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the Limit of Liability set forth in Item 3 of the Declarations....

(*Id.* ("Section I. INSURING AGREEMENTS B. Defense Coverage").)

The Policy also defines the following terms:

> A "Wrongful Act" as defined by the policy is:

... any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one of more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

(*Id.* ("Section II. DEFINITIONS S").)

"Claim" as defined by the Policy and modified by the Endorsement means:

1) a written demand for monetary or non-monetary relief;

2) a civil proceeding commenced by the service of a complaint or similar pleading;

3) a criminal proceeding commenced by a return of an indictment; or

4) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, against an Insured for a Wrongful Act, including an appeal therefrom.

(*Id.* ("Section II. DEFINITIONS B"); Endorsement ("2. Section II. DEFINITIONS B".)

The Policy defines "Loss" as:

... the total amount ... which any Insured becomes legally obligated to pay as the result of Claims first made against any Insured during the Policy Period for Wrongful Acts including, but limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs....

(*Id.*, Endorsement ("3. Section II. DEFINITIONS J".)

On October 16, 2008, Culbreath sued property owners Phyllis Kirkwood ("Kirkwood") and Nancy and Richard Lewis ("the Lewises"), in two separate actions in the Thirteenth Judicial Circuit Court in Hillsborough County, Florida, alleging that the condition of their respective properties violated the Culbreath Isles homeowners' association's bylaws. Culbreath sued these parties under section 720.305, Florida Statutes, which contains a "prevailing party" attorney's fee provision and, therefore, Culbreath was aware that if it lost these cases it would have to pay the prevailing defendants' fees.

Kirkwood was represented by the law firm of Buell & Elligett, P.A. ("B & E"), whose principal (Mark Buell) agreed to perform work on the case for $300 per hour. In her Answer to Culbreath's Complaint, Kirkwood demanded the attorney's fees she would incur in defending the action if she prevailed and asserted a counterclaim against Culbreath for slander of title. At Culbreath's request, Travelers appointed Litchfield Cavo, LLP to defend Culbreath against the counterclaim. The Lewises filed a Motion to Dismiss on December 12, 2008, in which they requested an award of fees should they prevail. Culbreath did not make a claim for coverage of its exposure for the fees the Lewises expected to incur in defense of Culbreath's lawsuit.

On June 11, 2010, the state court granted final summary judgment in favor of Kirkwood and the Lewises on Culbreath's claims against them, and Culbreath appealed. On June 23, 2010, Kirkwood and the Lewises filed their respective motions to tax fees and costs, arguing that: (a) they were entitled to fees as prevailing parties under section 720, Florida Statutes; and (b) Culbreath's cases against them were frivolous and, thus, they were entitled to fees under section 57.105, Florida Statutes. For the first time, on July 20, 2010, over a year and a half after the Lewises demanded fees in their first motion to dismiss Culbreath's suit, Culbreath notified Travelers that it was seeking cov-

erage under the Policy for the Lewises' fees.

On August 11, 2010, Buell wrote to Culbreath's counsel that Kirkwood had incurred fees of $87,357.50 through July 20, 2010, and that she would seek "a multiplier of approximately 2 to 2.5 consistent with Florida law." (*See* Dkts. 65, Ex. D.) The next day, the state court entered an order granting Kirkwood and the Lewises' motions for attorneys' fees and costs, reserving jurisdiction to determine the amounts to be awarded. (Dkts. 66, Exs. 18 & 19)

Then, on December 23, 2010, prior to any hearing on the amount of the award of attorney's fees, Kirkwood and Culbreath resolved the issue of the amount of fees when, Buell, purportedly with his client's knowledge and consent, signed a "Joint Stipulation and Agreement" ("the Stipulation") with Culbreath. (Dkt. 65, Ex. E.) Pursuant to the Stipulation, Kirkwood waived her right to collect fees from Culbreath. (*Id.*) In exchange for this immunity, Culbreath agreed to the entry of a judgment against it in the amount of $295,000 "in favor of ... Kirkwood ... payable to Buell & Elligett, P.A." (*Id.*) Based on the terms of the Stipulation, Kirkwood agreed that she would not "execute upon, record, or otherwise act upon" that $295,000 judgment. Culbreath assigned to Kirkwood and B & E "the proceeds from any and all actions, causes of action, or rights it has against any person or entity, including ... Travelers." (*Id.*; Dkts. 66, Ex. 22.)

Therefore, by the terms of their Stipulation, Kirkwood gave up a definite executable judgment against Culbreath in exchange for a speculative claim against Travelers. Kirkwood relinquished the assured reimbursement of any fees she paid

so that B & E could collect $295,000, fees that far exceeded what it billed. Along with the settlement, Culbreath, Kirkwood, and B & E executed a promissory note whereby Culbreath agreed to pay the latter two up to $50,000 (for "attorney's fees") plus interest depending on how much Kirkwood recovered from Travelers. (Dkt. 65, Ex. F)

On December 27, 2010, B & E delivered both the Stipulation and the proposed Consent Final Judgment to the state court judge and asked him to enter the judgment. In the Stipulation, Mr. Buell represented the following to the court:

> 11. **Representatives.** Each party to this Agreement represents and warrants to the other party hereto that such party has the full authority to bind it, and its successors and assigns, to the terms of this Agreement, and that the person signing it on each such party's behalf has been expressly authorized and instructed to do so by such party.
>
> Each party to this Agreement represents to the others that they are entering into this agreement freely and voluntarily being fully advised of the legal effect of this document by their respective attorneys.

(Dkt. 65, Ex. E.) The state court judge entered the Consent Final Judgment without holding a hearing. (Dkts. 66, Exs. 23; Ex. 2, p. 11.)

On March 3, 2011, Kirkwood, through Plaintiff Orline Sidman filed a Third Party Complaint against Travelers, arguing that pursuant to the assignment she (as Kirkwood's personal representative)[1] and B & E had received from Culbreath, she could sue Travelers under the policy it had issued to Culbreath. The Third Party Com-

---

1. Kirkwood had suffered a stroke and become incapacitated. She late died on December 24, 2012, leaving no heirs. The Probate Court appointed Sidman as the personal representative of Kirkwood's estate on March 21, 2013.

plaint against Travelers argued that the Policy provided Culbreath with coverage for the $295,000 in defense fees Culbreath "agreed" she had incurred and that she was awarded. (Dkt. 66, Ex. 27.) On March 11, 2011, Culbreath, which had entered into a $212,417 settlement agreement with the Lewises, filed its own Third Party Complaint against Travelers in which it argued, as Sidman did in her Third Party Complaint, that the Policy indemnified Culbreath for its liability for fees awarded to the defendants who Culbreath unsuccessfully sued. (Dkt. 66, Ex. 28.)

Travelers moved to dismiss both Sidman's and Culbreath's third party actions, but the motions were denied. Travelers then petitioned the Second District Court of Appeal for a writ of certiorari. The appellate court issued a writ of prohibition barring the lower court from adjudicating the case on the basis that the lower court lost jurisdiction when it entered the final judgments approving Culbreath's settlements with Kirkwood and the Lewises and awarded fees to those defendants. (Dkts. 66, Exs. 29 & 30.)

After the appellate decision issued, Culbreath and Sidman sued Travelers in state court, and Travelers removed the action to this Court on December 28, 2012. Travelers moved to dismiss Sidman's claim for failure to join a necessary party, B & E, which claimed an ownership interest in the claim against Travelers that Culbreath had assigned, and that motion was denied. Two principals of B & E then formed a corporation known as Defendant Florida Policyholders, LLC ("FP"), presumably because they were faced with the prospect of having to join the action and, therefore, subject B & E to the obligations of a party. (Dkt. 66, Ex. 33, 4:2–18.) B & E transferred its purported interest in the claim against Travelers to FP. FP then became a Plaintiff in this case while B & E continued to represent Sidman. (*Id.*)

### Summary Judgment Standard

The parties are in agreement that his lawsuit should be resolved through summary judgment proceedings. Summary judgment is appropriate where there is no genuine issue of material fact. Fed. R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Having done so, the Court finds that Travelers is entitled to the entry of final summary judgment in its favor on all claims.

### DISCUSSION

■ Plaintiffs contend that the Policy insures Culbreath's liability for the defense fees incurred by Kirkwood and the Lewises resulting from Culbreath's unsuccessful affirmative actions against them. Specifically, Plaintiffs urge that the judgment against Culbreath is a "loss", as defined by the Policy, that the defendants' demands in the underlying state court case for attorneys' fees and request to construe the restrictive covenants are "claims", as defined by the Policy, and that Culbreath's filing of the underlying lawsuit in the state court action was a "wrongful act", as defined in the Policy, against the defendants in that case. The Court agrees with Travelers that this contention is untenable in light of the Policy's language and is simply incorrect as a matter of law. Even if the prayers for fees could be considered

"claims," they are the type of claim that does not fall within the ambit of the "Liability Coverage" provided by the Policy. Additionally, when the Policy is construed as Plaintiffs urge, the Court agrees with Travelers that it contravenes public policy and offends the principles of fairness and reasonable interpretation of language that characterize contract law.

▮▮▮ Under Florida law, "insurance contracts are interpreted according to the plain language of the policy except 'when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.'" *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla.2005). Furthermore, "a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley S. Condo. Ass'n*, 680 So.2d 588, 590 (Fla.Dist.Ct.App.1996). In Florida, it is well settled that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). Thus, Plaintiffs err in selectively applying certain provisions while ignoring others.

Section I ("Insuring Agreements") provides in relevant part that:

A. The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim *first made against the Insureds* and reported in writing to the Insurer during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

(Dkts. 75, Ex. A (emphasis added).) Clearly, the Policy only contemplates insuring against "loss … incurred … as a result of any Claim … *first* made *against*

the Insured." The Policy is drafted carefully, selectively using the words "by" and "against." For example, it defines "Wrongful Acts" as acts committed *by* the insured (*See* Ex. A, Section II, Part S— meaning Culbreath or one of its officers has to affirmatively act or fail to act in a way that gives rise to a claim against it. The focus is clearly on Culbreath. Conversely, for the purposes of determining whether a Wrongful Act gives rise to a claim that comes within the ambit of the Policy's liability coverage, the focus is outward (*i.e.*, on non-insureds). For this reason, the Policy provides that Travelers will pay amounts resulting from claims made *against* the insured.

The Policy does not provide coverage for the subject attorneys' fees. It is clear that the legal fees at issue here never would have been incurred, and Culbreath would never have found itself liable for them, "but for" the fact that suit was filed *by* Culbreath. And, the loss at issue here did not result from the "wherefore" clauses of Kirkwood and the Lewises, which is the purported claim against Culbreath. The loss resulted from Culbreath's decision to pursue lawsuits against two homeowners and that was the first act that precipitated the "loss" at issue. The legal obligation to pay the Lewis and Kirkwood fees did not even arise "as a result of" the "wherefore" clauses in the respective responses to Culbreath's lawsuits against them, but rather, from the fact that they prevailed and that Culbreath had sued them under a prevailing party statute. Had Culbreath not sued under a prevailing party statute, even if Defendants prevailed, there would be no liability for the fees despite prayers in the "wherefore" clauses.

Travelers argument is supported by *Weinstein & Riley, P.S. v. Westport Ins. Corp.*, 2011 WL 887552, *18–19 (W.D.Wash. Mar. 4, 2011), *aff'd on other*

*grounds,* 484 Fed.Appx. 121 (9th Cir.2012), where the federal court interpreted similar policy language. The insured in *Weinstein* demanded policy benefits for a case in which it was a plaintiff because it was factually related to one in which it was a defendant. The relevant "duty to defend" language in the policy provided that:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any . . .

The Court determined that there was no coverage under this provision, concluding that:

> This language is unambiguous. Under the Policy, [Insurer] agreed to defend any claim for loss made *against* Plaintiffs. (Ex. A., Lawyers Professional Liability Coverage Unit I.A, II.A.) The Policy does not include a provision triggering a duty to "defend" affirmative claims made by the insured.

*Id.* (emphasis in original). It was an affirmative act by the insured (filing a third party complaint) that exposed it to any claims, judgments, or damages. *Id.* Recognizing this, the *Weinstein* court reasoned that the insurer's duties under the policy were only triggered by claims made "against" the insured, and losses suffered as a result of affirmative claims asserted by the insured were not covered. In other words, no benefits from the liability and defense policy should be available to the insured when it was the one that initiated the action. *Id.* The Court must agree with Travelers that for these same reasons, the instant Policy does not indemnify Culbreath for losses suffered because of the

suits Culbreath filed against the Lewises and Kirkwood.

Travelers provided the Court with a number of cases decided by courts across the country that all stand for the proposition that insurance companies who issue liability and defense policies have no obligation to offer policy benefits to insureds in the context of offensive actions (claims filed "by" insureds). *See Towne Realty, Inc. v. Zurich Ins. Co.,* 201 Wis.2d 260, 548 N.W.2d 64, 68–69 (1996) (denying coverage because "[a]t the risk of stating the obvious, a countersuit initiated by the insured cannot logically be a suit seeking damages from the insured"); *Shoshone First Bank v. Pac. Employers Ins. Co.,* 2 P.3d 510, 516–17 (Wyo.2000) (finding no coverage for claims resulting from litigation initiated by the insured, "no matter how factually intertwined the claims may be"); *Spada v. Unigard Ins. Co.,* 80 Fed.Appx. 27, 29 (9th Cir.2003) (unpublished) (holding that counterclaims and cross-claims do not come within the common meaning of "defense"); *James 3 Corp. v. Truck Ins. Exchange,* 91 Cal.App.4th 1093, 1104, 111 Cal.Rptr.2d 181 (Cal.App. 6th. Div.2001) (holding that "there is nothing in the policy that contractually obligates [the insurer] to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints."); *International Ins. Co. v. Rollprint Packaging Prods., Inc.,* 312 Ill.App.3d 998, 245 Ill.Dec. 598, 728 N.E.2d 680, 694 (2000) (holding insured's counterclaim was not defensive in nature); *Red Head Brass, Inc. v. Buckeye Union Ins. Co.,* 135 Ohio App.3d 616, 735 N.E.2d 48 (1999) (holding that insurer is not obligated to pay expenses for prosecuting compulsory counter-claim); *Reynolds v. Hartford Accident & Indem. Co.,* 278 F.Supp. 331, 333 (S.D.N.Y.1967) (holding that "as the insurance contract never contemplated the obligation to bring affirmative claims on behalf of its assured . . . to imply an obligation on

its part to bring counterclaims would be manifestly unfair"); *see also,* Windt, Insurance Claims and Disputes § 4:41 (4th ed. 2001) (stating that "[a]n insurer, being obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured"). Plaintiffs do not cite any cases refuting this line of reasoning or construing defensive policies such as the one at issue here to allow for recovery costs incurred in the prosecution of affirmative claims. This Court is persuaded that because the losses in this case are the result of a claim filed *by* Culbreath rather than *against* Culbreath, Travelers has no duty to indemnify or otherwise offer coverage for those amounts.

Construing the Policy as Plaintiffs suggest would allow insureds to use such policies to avoid the consequences of losing actions they initiate. As Travelers argues, fee-shifting provisions such as the one in section 720.305, Florida Statutes, at issue here, section 57.105, Florida Statutes, and Rule 11, Federal Rules of Civil Procedure, would effectively be eviscerated by a ruling that requires insurance companies to indemnify insureds for losses incurred in actions the insureds start, even those with no merit. Another absurd result that would arise from Plaintiffs' interpretation of the Policy concerns Travelers' (and every other insurer's) rights as the Insurer. Under Plaintiffs' theory, if every "wherefore" clause constituted a written demand for relief (*i.e.,* a claim) that triggers Travelers' (and every other insurer's) responsibilities under the policy, Travelers (and every other insurer) would have to participate in *every* lawsuit commenced by an insured.

Travelers provides the valid example that if Culbreath (or any insured) sued a builder for breach of contract, and the builder replied with a "wherefore" clause seeking its defense fees, Travelers (or any other insurer) would have to intervene and "defend" Culbreath (or any other insured filing suit) against that written demand for fees, by affirmatively prosecuting and trying to win the case, since that would be the only way to avoid having to pay the other side's fees. Travelers (and every other insurer), thus, would have to fund and assume control of the prosecution of the lawsuit, a situation that is not at all contemplated under these types of policies. Here, Travelers did not even have the opportunity to defend against the fee claims at the outset. By the time Travelers was given an opportunity to participate in the litigation regarding the fee claims, Culbreath had already lost its case against the homeowners, meaning fees would be awarded to the homeowners, as the prevailing parties, pursuant to section 720.305, Florida Statutes.

Plaintiffs' coverage theory guts statutory fee-shifting provisions, gives insureds carte blanche to file risk-free suits, and gives insurers incentives to low-ball settlement offers and raise premiums, all of which flies in the face of public policy and common sense. Travelers' interpretation of the Policy as a defense policy not designed to subsidize an insured's affirmative litigation is, in contrast, reasonable and sensible. Culbreath's former counsel even conceded that the fee claims here did not did not trigger Travelers' duty to defend or indemnify:

Q: All right. Shortly after receiving this motion to dismiss, which looks like it was served on you around December 12, 2008, did you call Travelers and tell them that Doctor and Mrs. Lewis had demanded that we receive—demanded the complaint against them be dismissed?

[Objection]

A: [Friscia]: No.

Q: And, again, just to be clear, you didn't call Travelers shortly after you got this and say, Travelers, Doctor and Mrs. Lewis who we have sued have demanded that they be awarded their attorneys fees and we have exposure for these attorneys fees if we lose this case?

[Objection]

A: **No. Why would I?**

. . .

Q: When Culbreath filed the lawsuit against Mrs. Kirkwood, to the best of your knowledge, did Culbreath call Travelers and ask Travelers to defend Culbreath in that lawsuit?

[Objection]

A: Stat [sic] the question again. When—

Q: When Culbreath filed the lawsuit against Mrs. Kirkwood, did Culbreath at any time prior to filing it call Travelers and ask Travelers to defend Culbreath in a lawsuit against Mrs. Kirkwood?

[Objection]

A: There was no lawsuit brought by Mrs. Kirkwood against the association at that time. **The association was bringing a claim against Mrs. Kirkwood. So the answer to that is No. Why would we call Travelers?**

(Dkts. 65, Ex. B, 25:18–26:9; 35:19–36:9.) Therefore, it is clear that the parties understood that there was no place for Travelers at the beginning of the underlying action, and that the mere filing of the suits against the homeowners did not necessitate Travelers' intervention.

■ The unreasonableness of Plaintiffs' interpretation of the Policy renders their allegations that it is ambiguous moot. Under Florida law, only reasonable interpretations of policies can create ambiguity construable against the drafter. *See, e.g., Washington Nat'l Ins. Corp. v. Ruderman,* 117 So.3d 943, 950–51 (Fla.2013). "[T]he

rule of adverse construction is a 'secondary rule of interpretation' or a 'rule of last resort,' which should not be used if the parties' intent can otherwise be determined from a plain reading of the policy." *Office Depot v. Nat'l Union Fire Ins. Co.,* 734 F.Supp.2d 1304, 1314 (S.D.Fla.2010).

In light of the Court's finding that the Travelers' Policy does not provide coverage for Culbreath's loss incurred as a result of claims made by Culbreath, Travelers' remaining arguments regarding Culbreath's misrepresentations on the 2010 Policy renewal application and Culbreath's failure to comply with the notice provisions of the Policy need not be addressed.

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

Defendant Travelers Casualty and Surety Company of America's Motion for Summary Judgment (Dkt. 65) is **GRANTED.** Plaintiff Culbreath Isles Property Owners Association, Inc.'s Motion for Summary Judgment (Dkt. 61), Plaintiff Florida Policyholders, LLC's Motion for Summary Judgment (Dkt. 63) and Plaintiff Orline M. Sidman's Motion for Summary Judgment are **DENIED.**

The Clerk is directed to enter final judgment in favor of Defendant Travelers Casualty and Surety Company of America, terminate all pending motions, and **CLOSE** this case.